298 S.W.3d 546 (2009)
Carol ECKELKAMP, Conservator of the Estates of Mitchell Heimann and Melanie Heimann, and Denise Heimann, Individually, and Louis Heimann and Mary Heimann, Plaintiffs/Appellants,
v.
BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, Defendant/Respondent.
No. ED 92018.
Missouri Court of Appeals, Eastern District, Division Two.
November 3, 2009.
Rehearing Denied December 7, 2009.
*548 Stephen H. Ringkamp, Theresa A. Appelbaum, St. Louis, MO, for Plaintiffs/Appellants, Carol Eckelkamp, Conservator, Louis Heimann and Mary Heimann.
Ronnie L. White, Thomas E. Schwartz, St. Louis, MO, for Plaintiff/Appellant, Denise Heimann.
Thomas E. Jones, Harlan A. Harla, Booker T. Shaw, Crystal M. Campbell, Thompson Coburn, Belleville, IL, for Respondent.
Before SHERRI B. SULLIVAN, P.J., ROBERT G. DOWD, JR., J., and NANNETTE A. BAKER, J.
PER CURIAM.

Introduction
Carol Eckelkamp, Conservator of the estates of Mitchell Heimann and Melanie Heimann, and Denise Heimann, individually, and Louis Heimann and Mary Heimann (Appellants) appeal from the judgment of the trial court entered upon a jury verdict on Appellants' wrongful death claim assessing damages at $2,600,000.00, and apportioning 90% fault to Robert Heimann, Appellants' Decedent (Decedent), and 10% fault to Burlington Northern Sante Fe Railway Company (Respondent), for a net verdict of $260,000.00 to Appellants.

Factual and Procedural Background
On October 24, 2001, Decedent was driving his pickup truck westbound on County Road 413(413) when he collided at a railroad crossing with a northbound traveling freight train operated by Respondent. Decedent died from the injuries he sustained from the collision.
Respondent maintained the railroad crossing, which contained a "crossbuck" warning device, right at the track crossing. A crossbuck is a sign composed of two slats of wood or metal of equal length, fastened together on a pole in a saltire formation (resembling the letter "x"). Crossbucks are used as traffic signs to indicate level railway crossings. It is a passive warning device; i.e., it just sits there, it is not "activated" to alert a motorist of an approaching train as are active warning devices, such as flashing light signals, bells and descending gates.
The railroad crossing's southeast quadrant, towards which Decedent would have had to look to see an impending northbound train as he was approaching the crossing heading westbound on 413, contained a levee that ran parallel to 413 such that a motorist would not have a clear and unobstructed view of the tracks to the south, from which a northbound train would be approaching, until that motorist was 93 feet from the tracks, according to Respondent's expert, William Kennedy, or as close as 50 feet from the tracks, according to Appellants' expert, Kenneth Heathington (Heathington).
The only other warning of the railroad crossing at issue in this case was an "advance warning sign" that was a round, yellow or orange sign, with a big X splitting the letters "RR," indicating there is a railroad crossing ahead. Whether this *549 sign was actually present at the time of the collision cannot be proved.
The train's engineer, James Frier (Frier), testified that he saw Decedent's truck about 50 feet from the railroad crossing in a split second before the crash, after the train had cleared the levee. Frier testified that Decedent was looking straight ahead, and not in the direction of the train, although Frier testified he sounded the train's whistle at the whistle stop and blew its horn continuously from the whistle stop and sounded the train's bell.
There was no evidence presented at trial of Decedent's speed, and conflicting evidence presented as to whether Decedent's car radio was playing so loudly that he would not be able to hear the train's whistle and horn. The train's "black box" recording, which would have confirmed the engineer's testimony that he sounded the whistle, bell and horn, was unavailable. There were no skid marks at the scene.
After the jury returned its verdict apportioning 90% fault to Decedent and 10% fault to Respondent, Appellants moved for a new trial, citing all four arguments of error presented here in this appeal. The trial court denied the motion. This appeal follows.

Points on Appeal
In their first point, Appellants allege that the trial court erred in giving Respondent's comparative fault Instruction No. 6, because it was not supported by the evidence and constituted a roving commission in that (a) there was no evidence that Decedent had the means or ability to stop at the time the train became visible; (b) it assumed a controverted fact that the train was visible at a time when the Decedent was able to stop; and (c) it was substantially prejudicial to Appellants.
In their second point, Appellants contend that the trial court erred in allowing Respondent's counsel to display, read, and debate for an extended period of time in the presence of the jury Section 304.035[1] (relating to a driver's duty at a railroad crossing) because said testimony was inadmissible and improper in that (a) reading statutes to the jury is improper; (b) expert testimony regarding conclusions of law is improper; (c) duties of a motorist at a railroad crossing is not the proper subject of expert testimony; and (d) the admission of Section 304.035 constituted reversible error because it misled the jury as to the law in the case.
In their third point, Appellants maintain that the trial court erred in precluding them from introducing evidence concerning the construction by Respondent of flashing light signals and gates because said evidence was admissible in that (a) such evidence is not barred by 23 U.S.C. Section 409; (b) such evidence does not constitute a subsequent remedial measure; and (c) Respondent opened the door to such evidence.
In their fourth point, Appellants assert that the trial court erred in prohibiting them from withdrawing their admission and introducing evidence of the lack of an advance warning sign at the time of the collision because presentation of the merits would be subserved by such withdrawal and there was no prejudice to Respondent in withdrawing the admission in that (a) Respondent knew the admission was incorrect and Appellants believed the admission was correct; and (b) the court allowed false evidence to remain before the jury after the truth of the matter was discovered.

Discussion
We find Point II to be dispositive of this appeal. In Point II, Appellants *550 contend that the trial court erred in allowing Respondent's counsel to display to the jury the entire text of the statute setting out Decedent's duty as a motorist when approaching a railroad grade crossing.
Generally, appellate review of the trial court's ruling on the admission of evidence is limited to whether the court abused its discretion. State v. March, 216 S.W.3d 663, 664 (Mo.banc 2007).
Missouri courts hold that reading a statute to the jury is improper. Lasky v. Union Elec. Co., 936 S.W.2d 797, 802 (Mo. banc 1997). If, in reading the statute, counsel misstates the law or misleads the jury, it is reversible error. Id. See also Domijan v. Harp, 340 S.W.2d 728, 734 (Mo.1960); Inman v. Bi-State Dev. Agency, 849 S.W.2d 681, 683 (Mo.App. E.D. 1993); Bly v. Skaggs Drug Centers, Inc., 562 S.W.2d 723, 726 (Mo.App.K.C.D.1978). Displaying a statute for a jury to read itself is at least as egregious as reading it to the jurors.
In this case, over Appellants' continuing objections and at the request of defense counsel, Heathington not only read portions of the statute to the jury during cross-examination, but Respondent's counsel also displayed the statute to the jury with relevant portions highlighted on an overhead projection.[2]
Respondent claims the error was invited during testimony by Heathington, who testified on direct examination about the nonrecovery zone:
Q And is a definition of a nonrecovery zone provided by the Federal Highway Administration, U.S. Department of Transportation?
A That's correct.
Q Now, would you explain what that nonrecovery zone is?
A It's the distance that a vehicle will travel in two and a half seconds of perception/reaction time and then skidding the distance for 10 miles an hour, come to a stop. And the front bumper will be approximately 15 feet from the nearest rail which is by law in most states where you are suppose[d] to come to a legal stop.
Although Heathington mentioned the "law in most states," he never testified that failing to follow this was a criminal offense.
On cross-examination, when Respondent's counsel questioned Heathington about the regulation, Respondent's counsel misquoted the statute.[3] The following exchange was in front of the jury:
Q (by Mr. Jones): What it does provide is that a motorist approaching a railroad grade crossing that has crossbucks only is required to be prepared to stop and bring his vehicle to a stop within 15 to 50 feet of the crossing if the train is in a hazardous proximity to the crossing, correct?
. . . .
MR. RINGKAMP: Hold on.
THE COURT: Objection?

*551 MR. RINGKAMP: Yes, Your Honor. I would like to object again to Mr. Jones' attempting to instruct the Court and the jury on what the law is. That is the Court's function. And I don't think that's an appropriate subject for this expert.
THE COURT: Unfortunately there was a lot of commentary about a driver would do this or that during the direct.[4] This is now fair cross-examination. Overruled.
MR. RINGKAMP: So I don't have to interrupt 
THE COURT: Continuing objection accepted.
A You have misquoted it.
Q (by Mr. Jones) Well, I don't have it right in front of me.
A I have it right here if you would like to read it. We can read it if you would like to.
Q I do have a copy and so we can put it up.
A I have a copy right here.
Q I will let you have your copy, and I will put it up.
At this point, Respondent's counsel gave Heathington a copy of Section 304.035, and also put a copy of Section 304.035 on an overhead projector, with the title and subsection 1(3) highlighted, but no portions redacted or blacked out. Accordingly, the entire text was displayed for the jury to read. Questioning continued as follows:
Q (By Mr. Jones) We can read it. If you want to go ahead, read it, but be loud enough.
A I can read. It says you have to stop within 15 feet. If you look at Number 3, it says an approaching railroad train is visible and is in hazardous proximity. No question on that. If it's visible and in hazardous proximity, you have to stop. Your question was if it is in hazardous proximity, and that's what you are not quoting correctly.
Section 304.035 in its entirety reads as follows:
Stop required at railroad grade crossing, whenpenalty
1. When any person driving a vehicle approaches a railroad grade crossing, the driver of the vehicle shall operate the vehicle in a manner so he will be able to stop, and he shall stop the vehicle not less than fifteen feet and not more than fifty feet from the nearest rail of the railroad track and shall not proceed until he can safely do so if:
(1) A clearly visible electric or mechanical signal device warns of the approach of a railroad train; or
(2) A crossing gate is lowered or when a human flagman gives or continues to give a signal or warning of the approach or passage of a railroad train; or
(3) An approaching railroad train is visible and is in hazardous proximity to such crossing; or
(4) Any other traffic sign, device or any other act, rule, regulation or statute requires a vehicle to stop at a railroad grade crossing.
2. No person shall drive any vehicle through, around or under any crossing gate or barrier at a railroad crossing when a train is approaching while such gate or barrier is closed or is being opened or closed.

*552 3. No person shall drive a vehicle through a railroad crossing when there is not sufficient space to drive completely through the crossing.
4. No person shall drive a vehicle through a railroad crossing unless such vehicle has sufficient undercarriage clearance necessary to prevent the undercarriage of the vehicle from contacting the railroad crossing.
5. Every commercial motor vehicle as defined in section 302.700, RSMo, shall, upon approaching a railroad grade crossing, be driven at a rate of speed which will permit said commercial motor vehicle to be stopped before reaching the nearest rail of such crossing and shall not be driven upon or over such crossing until due caution has been taken to ascertain that the course is clear. This section does not apply to vehicles which are required to stop at railroad crossings pursuant to section 304.030.
6. Any person violating the provisions of this section is guilty of a class C misdemeanor.
Prior to its deliberations, the trial court gave the jury Instruction No. 6, a comparative fault instruction, incorporating the motorist's duty set forth in Section 304.035.1(3):
In your verdict you must assess a percentage of fault to [Decedent], whether or not [Respondent] was partly at fault, if you believe:
First, either:
Decedent failed to stop his vehicle within fifty feet but not less than fifteen feet from the nearest rail of the railroad crossing while an approaching train was visible and the train was in hazardous proximity to the crossing; or
Decedent failed to stop his vehicle after an audible whistle was sounded at the whistle post, and
Second, Decedent, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and
Third, such negligence of Decedent directly caused or directly contributed to cause the death of [Decedent].
The term "negligent" or "negligence" as used in this instruction means the failure to use the highest degree of care. The phrase "highest degree of care" means that degree of care that a very careful person would use under the same or similar circumstances.
In Missouri, the jury is to obtain the law only from approved jury instructions. Dorrin v. Union Elec. Co., 581 S.W.2d 852, 860 (Mo.App. E.D.1979). The purpose of instructions is to guide the jury in reaching a just verdict by informing the jurors of the law as it is to be applied to the evidence they have heard. Id. See also Richardson v. Colonial Life and Accident Ins. Co., 723 S.W.2d 912, 916 (Mo.App. E.D.1987). ("By its instructions to the jury the court declares its construction of the law.")
In a case that appears to be factually similar to the one before us, Krenski v. Aubuchon, the trial court allowed the plaintiff's counsel to read Section 304.351.1 to the jury. 841 S.W.2d 721, 726 (Mo.App. E.D.1992) (overruled on other grounds). The defendant did not object and this court reviewed for plain error. Id. In Aubuchon, the statute that was read to the jury referred to the duty of a driver entering an unmarked intersection to yield to a vehicle already in the intersection. Section 305.351.1. The jury instruction, MAI 14.02, was a definition of a driver's duty to yield when entering an otherwise unmarked traffic intersection to a driver already *553 in the intersection. Aubuchon, 841 S.W.2d at 726. We found that the statute read to the jury did not misstate the law and that the jury received substantially the same statement of law in the jury instruction. Id. Therefore, we held that although it was improper to read the statute to the jury, no prejudicial error was committed and no miscarriage of justice took place. Id.
Unlike in Aubuchon, in the case at bar, the statute was not only read to but on display for the jury in its entirety, despite repeated objections by Appellants. Although a portion of the statute emphasizes Decedent's driver's duty, the statute also states that any person violating the provisions of it is guilty of a class C misdemeanor.
During its deliberations, the jury requested, "the document that has actual law on stopping at crossbucks (MO Driver's rule)." The trial court denied that request, instructing them to rely on the court's instruction for the applicable law. The jury's request to see the statute indicates that the jury improperly considered the actual law in this case to be the statute as displayed and read to them.
As noted above, the jury is confined to follow the instructions as given by the trial court. In this case, the instructions set forth the elements of negligence, with the duty element of negligence taken from the statute. However, the statute not only contained the motorist's duty, but also a state criminal penalty for breaching that duty. The jury requested to see the statute, because it had been shown to them in its entirety, including the criminal penalty for, and misdemeanor classification of, the breach of the duty set forth in the statute. This criminal penalty was not a part of this negligence cause of action, and introduced an added dimension of criminal liability on the part of Decedent which was irrelevant to this negligence cause of action, and highly prejudicial.
Indication that a defendant in a civil negligence case violated a criminal statute while breaching his duty of care is highly prejudicial. In State v. Watson, 672 S.W.2d 701, 703 (Mo.App. E.D.1984), a criminal case, this Court held that reading a statute to the jury misled them even though the statute was not misstated in its reading. The statute contained a phrase that was not in the jury instruction that created the impression to the jury that the defendant and not the State carried the burden of proof. Id. This court held that the reading of the statute was prejudicial and therefore reversible error. Id.
The display of the statute in this case effectively told the jury that Decedent's conduct was a violation of a criminal statute and was characterized in the law as a misdemeanor. Further, it tainted the jury's deliberations by silently injecting into the case a shifting of the standard of Decedent's comparative fault to negligence per se. Black's Law Dictionary defines negligence per se as "Negligence established as a matter of law, so that breach of the duty is not a jury question. Negligence per se usually arises from a statutory violation.  Also termed legal negligence." Black's Law Dictionary 1135 (9th ed.2009).
Respondent relies on the invited error doctrine to argue that Appellants are barred from using the display and reading of portions of the statute to the jury as grounds for reversal. We disagree. The invited error doctrine holds that "a party cannot complain on appeal of any alleged error in which, by his or her own conduct at trial, he or she joined in or acquiesced to." Eltiste v. Ford Motor Co., 167 S.W.3d 742, 754 (Mo.App. E.D.2005). While Appellants' expert Heathington discussed the *554 statute in his report and a copy of it was admitted as an exhibit to his deposition, neither the report nor the deposition was made available or displayed to the jury. On cross-examination, it was Respondent who elicited Heathington's testimony reading portions of the statute, and even more significantly, it was Respondent who displayed the statute to the jury over repeated objections by Appellants' counsel. Thus, Appellants are not barred by the invited error doctrine from asserting that the reading aloud and display of the statute constitutes reversible error.
Based on the foregoing, Point II is granted. The remaining points are rendered moot by this decision.

Conclusion
The jury is to be guided by the law as contained in approved jury instructions as provided by the trial court. Here, the trial court allowed a statute with a criminal penalty for noncompliance, categorized as a misdemeanor, to be displayed to the jury for an extended period of time, in a civil negligence case. This resulted in reversible error. Because we find Point II to be dispositive of this appeal, we decline to review the other points for error. We reverse and remand for a new trial consistent with this opinion.
NOTES
[1] All statutory references are to RSMo 2000, unless otherwise indicated.
[2] The trial court overruled Appellants' objections to the statute's display, calling it "demonstrative evidence." Black's Law Dictionary defines "demonstrative evidence" as "[p]hysical evidence that one can see and inspect (i.e., an explanatory aid, such as a chart, map, and some computer simulations) and that, while of probative value and usually offered to clarify testimony, does not play a direct part in the incident in question." Black's Law Dictionary 636 (9th ed.2009). We are unaware of any case law that allows a statute to be shown to the jury as "demonstrative evidence" or indeed classifies a statute as such.
[3] Respondent's counsel omitted the requirement that the approaching train be visible.
[4] We note that Heathington never mentioned that this statute setting forth a motorist's duty had a criminal penalty for noncompliance.