Kathleen KLINE, Appellant,

v.

CITY OF KANSAS CITY, Missouri,
Respondent.

No. WD 72208.

Missouri Court of Appeals,
Western District.

Feb. 15, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 2011.

Application for Transfer Denied
April 26, 2011.

634

Karen K. Howard and Joseph H. De-Cuyper, Jr., Kansas City, MO, for appellant.

Saskia C.M. Jacobse and Jamie L. Cook, Kansas City, MO, for respondent.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, GARY D. WITT, Judge and ZEL M. FISCHER, Special Judge.

GARY D. WITT, Judge.

Kathleen Kline appeals the judgment of the trial court, which denied both her mo- tion for new trial and motion for judgment notwithstanding the verdict after a jury rejected her claims against the City of Kansas City, Missouri. Kline filed suit against the City for sex discrimination and retaliation pursuant to the Missouri Human Rights Act, section 213.010[1] *et seq.*, as it pertained to her prior employment with the Fire Department. We affirm.

## Factual Background[2]

From 1977 to 2006, Kline was employed as a firefighter with the Kansas City Fire Department ("Department"). At the time she resigned in 2006, Kline had been promoted several times to reach the position of battalion chief (only the fire chief and deputy chiefs are higher in the chain of command pursuant to the Department's organization).

### A. Kline's Prior Lawsuits Against The City

Kline and the City have a history of employment related lawsuits, which will only be summarized as necessary for the purposes of the instant dispute on appeal. In 1994, Kline filed a Title VII lawsuit in the United States District Court, Western District of Missouri. After prevailing on her sex discrimination and retaliation claims against the City in a jury trial in 1997, Kline was awarded damages and the equitable relief of the trial court ordering the City to retroactively promote Kline to the position of battalion chief.

In 1999, Kline filed a second Title VII lawsuit against the City in the United States District Court, Western District of Missouri, which also alleged claims of sex discrimination and retaliation. This lawsuit alleged, *inter alia*, that the City dis-

---

1. All statutory citations are to RSMo 2000 as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

2. "The pertinent facts are viewed in the light most favorable to the jury's verdict." *Hayes v. Price*, 313 S.W.3d 645, 648 (Mo. banc 2010).

criminated against women by failing to provide locker-rooms to female firefighters that were comparable to the ones provided to male firefighters. After a plenary trial, the jury returned a verdict in Kline's favor in 2001.

## B. The Instant Lawsuit

In 2007, Kline filed the instant lawsuit against the City in the Circuit Court of Jackson County, which, as amended, alleged two claims pursuant to the Missouri Human Rights Act ("MHRA"), section 213.010 *et seq.* MHRA was enacted by the Missouri General Assembly, *inter alia,* "[t]o ... eliminate and prevent discrimination because of race, color, religion, national origin, ancestry, sex, age as it relates to employment, [or] disability." Section 213.030.1(1).

In Count One, Kline alleged that the City discriminated against her based upon her sex in violation of Section 213.055. The basis of Kline's sex discrimination claim was grounded in two distinct theories. To begin, Kline outlined her previous successful litigation against the City, and alleged that "[d]espite a jury verdict against Defendant ... during the period of January, 2001, through cessation of her employment, no efforts were made by Defendant to eliminate the discriminatory working conditions as to Plaintiff's facilities." Specifically, Kline alleged that the "fire stations to which Kline was assigned to and sent to for business reasons did not have equal and/or comparable facilities as Defendant provided to its male Fire Department employees" and contended that the City was required by law to provide separate facilities "for women to wash and dress."

Kline further alleged that the City discriminated against her based on her sex as it pertained to her July 2006 request "of Chief Dyer to trade posts with Battalion Chief Randy Mullens whose station had female facilities." Although Kline acknowledged in her Petition that "Chief Dyer denied the trade request for the reason the battalion chief who agreed to trade with Kline had not been in his position for [the required] three years," Kline alleged that this failure to grant the trade was based on discrimination because others had previously been allowed to transfer notwithstanding the fact that they "had not been in their positions for three years."

In Count Two, Kline alleged that the City unlawfully retaliated against her pursuant to Section 213.070 because Kline initiated previous litigation against the City, as outlined above. Because she engaged in these protected activities, Kline alleged that she was "subjected to adverse actions by Defendant to wit: (a) Defendant never remedied Kline's unequal facilities and she was subjected to discriminating working conditions, (b) Plaintiff made a request for a trade which was denied by Chief Dyer, and (c) Defendant engaged in retaliatory discipline of Kline."

From December 16, 2009, to December 22, 2009, these claims were tried before a jury, with counsel for each party presenting copious evidence to support their respective theories of the case.

The City presented the following (summarized) evidence to defend against Kline's claims of discrimination and retaliation. In October 2000, the City Manager hired Richard Dyer ("Dyer") as the Fire Chief. One of the main goals the City had in hiring Dyer was to remedy the situation(s) that had resulted in Kline's prior successful litigation. To accomplish this goal, the City implemented a plan to convert fire stations into "gender plus facilities" that were "unisex" and allowed each firefighter privacy in that they were to sleep in a cubicle and use a restroom that

could be locked for privacy. The goal of the City was not to convert all of the Department's facilities at one time because the cost would be too great; instead, in 2001 the City passed, via a general election, a fifteen year fire sales tax to pay the cost of updating the facilities, which would be updated as the funds became available to the Department. Some facilities would be remodeled to provide "gender plus facilities" while others would be completely replaced by new buildings with "gender plus facilities."

At trial, Kline admitted that during the relevant time period no one ever walked in on her while using a restroom or shower, nor did she ever walk in on anyone else.

Prior to Dyer being hired as the Chief of the Department, battalion chiefs had free rein to decide how to handle trade assignments themselves because the Department had no rules pertaining to these trades. Dyer believed that this system was inefficient and limited his ability to manage the Department. Accordingly, in 2002, Dyer set up a policy for the Department wherein trades would not be granted for battalion chiefs unless both participants had served at least three years in their current capacity, or there was a showing of extraordinary circumstances.

In 2006, Kline requested a mutual trade with Randy Mullens, allegedly so that she could work at a station with separate female facilities. Dyer denied the trade request on multiple grounds: (1) Mullens had only been at District 108 for approximately six months; (2) if the trade had been allowed there would have been three battalion chiefs at District 108 in a seven month period; (3) Dyer had heard from another employee of the Department that Kline had intended to retire during August 2006; and (4) neither Kline nor Mullens presented to Dyer any extraordinary circumstances that necessitated the trade.

The jury returned a verdict in favor of the City on both counts.

Kline subsequently filed a motion for new trial, and a motion for judgment notwithstanding the verdict. On March 2, 2010, the trial court entered its judgment denying both of Kline's motions.

Kline now appeals, bringing seven Points. Further facts will be outlined as relevant in the analysis section below.

### Analysis

On appeal, Kline brings six Points that allege the trial court erred in denying her motion for new trial. *Gallagher v. DaimlerChrysler Corp.*, 238 S.W.3d 157, 162 (Mo.App. E.D.2007), outlined the appropriate standard of review for these claims:

> We review the trial court's denial of a motion for new trial for abuse of discretion. We will reverse the trial court's decision only where we find a substantial or glaring injustice.... An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances before the court at the time and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration.

*Id.* (citations omitted).

In Point One, Kline argues that the trial court erred in denying her motion for new trial because the trial court should have prevented the City's witnesses from testifying "to facts which [the City] did not disclose prior to trial" in violation of applicable discovery rules. "A trial judge has wide latitude in ruling on whether to admit or exclude evidence." *Giles v. Riverside Transp., Inc.*, 266 S.W.3d 290, 295 (Mo. App. W.D.2008) (internal quotation marks omitted). "Under Rule 61.01, a trial court may admit or exclude testimony where a party provides incomplete or evasive an-

swers to discovery requests, including interrogatories." *Mitchell v. Schnucks Mkts., Inc.*, 100 S.W.3d 109, 112 (Mo.App. E.D.2002). "We defer to the trial court's broad discretion in administering the rules of discovery." *Feiteira v. Clark Equip. Co.*, 236 S.W.3d 54, 61 (Mo.App.E.D.2007). "When a discovery ruling is challenged, we consider whether the challenged act, under the totality of the circumstances, has resulted in prejudice or unfair surprise." *Id.*

On appeal, Kline focuses on two specific examples wherein she alleges the City presented "new evidence" at trial that should have been previously disclosed during discovery. Both of these instances involve the trial testimony of Dyer.

■ In regard to Kline's claim that she was discriminated against by the City because it refused her trade request, the question to be decided at trial was whether the City had a non-discriminatory basis to refuse Kline's trade request. Kline served the following interrogatory, and the City's response, as relevant, is outlined below:

4) Please state all facts supporting each of your defenses (including affirmative defenses) to Plaintiff's First Amended Complaint and, a) Identify each person having knowledge of each fact which supports each defense to Plaintiff's First Amended Petition.

**1) Dyer had agreed with the union that trades would not be allowed; 2) Dyer was aware of a history of individuals close to retirement seeking to name their successor through the use of trades; 3) Dyer was aware of a history of inappropriate use of trades and transfers among rank and personnel. 4) Dyer invoked a policy/practice that trades would only be allowed by** *exceptional* **circumstances; 5) Dyer was aware or believed that Plaintiff intended to retire shortly; 6) Mullins had not been assigned to his position**

**for the required amount of time; ... 9) Plaintiff had never before requested a trade or transfer despite countless opportunities to do so; 10) Plaintiff has at least one prior opportunity to move her station, and elected not to do so.**

(Emphasis added.)

Kline complains that at trial Dyer testified, for the first time, that trades would only be allowed upon a showing of "extraordinary circumstances," when the City had previously indicated via discovery that trades would be allowed under "exceptional circumstances." "Courts in Missouri have long recognized that the rules relating to discovery were designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits and to provide a party with access to anything that is 'relevant' to the proceedings and subject matter of the case not protected by privilege." *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 927 (Mo. banc 1992).

. We fail to ascertain how this discrepancy in Dyer's testimony (using the term "extraordinary" as opposed to "exceptional" in this context) rose to the level of a discovery violation, let alone a discovery violation that would warrant the granting of a new trial. Kline fails to cite to any authority that would support the conclusion that such a change in vernacular by a witness constitutes a discovery violation pursuant to Missouri law. While Kline contends on appeal that swapping these two terms constituted a "glaring injustice" because these terms have "completely different" meanings, even Kline concedes that this distinction "may seem like semantics." It goes without saying that Dyer was a live witness, and accordingly, he could not be expected to testify identically to the responses given by the City via written discovery. Moreover, Kline has failed to demonstrate beyond conclusory

allegations that this discrepancy had any bearing on the instant proceedings because one need not consult a dictionary to know that these terms are synonyms in everyday use. "Jurors are credited with ordinary intelligence, common sense and an average understanding of the English language." *Graham v. Goodman*, 850 S.W.2d 351, 355 (Mo. banc 1993). We hold that such a discrepancy, under the facts of this case, does not constitute a discovery violation, and thus the trial court did not err in denying Kline's motion for new trial in this regard.

■ Kline further argues that a "second incident" of the City's "non-disclosure of evidence" occurred during Dyer's testimony when he gave inconsistent testimony as to whether he had spoken to the City Manager about "the goal of remedying discrimination." Specifically, Kline argues that because Dyer testified at his deposition that he had not had such a conversation with the City Manager, Dyer's inconsistent trial testimony that he did in fact have such a conversation with the City Manager constituted a discovery violation

that required the trial court to grant her motion for new trial. We disagree.

Inconsistent trial testimony by witnesses occurs routinely at trial, and Kline cites no authority to support the proposition that such an inconsistency somehow rises to the level of a *discovery violation*. And for good reason; because if we were to hold that every time a witness testified inconsistently at trial that a discovery violation occurred, thereby warranting a new trial, most cases would have to be tried ad infinitum. Opposing counsel is empowered to illustrate such inconsistent testimony on cross-examination to the jury, and such an *opportunity to impeach a witness is potent material* to undermine the credibility of a key witness at trial. Here, Kline's trial counsel admittedly did in fact impeach Dyer as it pertained to this very subject, and thus we find no error and no prejudice that stemmed to Kline in this regard.

■ For all of the aforementioned reasons, Point One is denied.[3]

■ In Point Two, Kline argues that the trial court erred in denying her motion for new trial because the "trial court's decision

---

3. In her reply brief, Kline contends that these two alleged non-disclosures were but a few of the "multiple nondisclosures of evidence the City withheld from plaintiff." But Kline does not dispute on appeal that she failed in her argument section to analyze "20 different instances where Appellee elicited testimonial evidence which had not been disclosed to Appellant in written discovery." Rather, in her statement of facts, Kline merely compiled a list of such instances, without providing *any analysis whatsoever* as to why any of these specific instances demonstrated that the trial court erred in denying her motion for new trial. Rule 84.04(d) " 'requires that a proper point relied on must: (1) identify the ruling or action of the trial court that is being challenged on appeal; (2) state the legal reason or reasons for the claim of reversible error; and (3) explain in summary fashion why, in the context of the case, the legal reason or reasons support the claim of reversible error.' "

*White v. White*, 293 S.W.3d 1, 13 (Mo.App. W.D.2009) (citation omitted). " 'Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made.' " *Id.* (citation omitted). "Issues not raised in the point relied on, as well as those that are unsupported by argument, are deemed abandoned." *Jones v. Jones*, 296 S.W.3d 526, 528 n. 1 (Mo.App. W.D.2009) (citing Rule 84.04(e)).

We take issue with the notion that because Kline could not be bothered to set forth the requisite analysis to demonstrate that any one of these alternative instances was grounds for reversal, that this Court should wade through this list on its own to do the analysis for Kline. Indeed, our rules prohibit us from doing so, and this is another reason, beyond those already explored at length, to deny Point One.

to permit evidence of station construction which occurred after 8/31/06 was not relevant in that Appellant had retired and her claim for damages predated 8/31/06," and "this evidence misled the jury to erroneously believe any construction of stations, no matter when it occurred absolved [the City] of liability."

 One of Kline's central claims at trial was that the City discriminated against her by failing to provide comparable facilities for women at stations and that the City failed to address this situation by constructing newer and better facilities solely for women. While Kline complains that the trial court erred in allowing evidence pertaining to "station construction occurring after 8/31/06," Kline fails to identify any specific "trial court ruling or action that the appellant challenges" in this regard. Rule 84.04(d). Regardless, we need not be detained by this argument because it is not disputed that the jury heard evidence, without objection, pertaining to the construction of new facilities for women which occurred after Kline retired from the Fire Department. "A party cannot be prejudiced by the admission of allegedly inadmissible evidence if the challenged evidence is merely cumulative to other evidence admitted without objection." *Swartz v. Gale Webb Transp. Co.,* 215 S.W.3d 127, 134 (Mo. banc 2007) (internal quotation marks omitted). "Cumula-

tive evidence is additional evidence that reiterates the same point." *Saint Louis Univ. v. Geary,* 321 S.W.3d 282, 292 (Mo. banc 2009).

 In her reply brief, Kline contends for this first time that "Appellant objected twice to evidence pertaining to facility construction which occurred after Appellant retired."[4] It is not disputed that there were numerous other times wherein the jury heard evidence of construction that occurred after Kline's departure, without objection. To give just one example, the City presented evidence of facilities that were constructed in 2008, to which Kline's trial counsel expressly stated that she had "[n]o objection." Ironically, Kline's own trial counsel stated in her closing argument that the City had discriminated against Kline in constructing these facilities after she retired, but Kline still somehow contends that the admission of this very evidence is a basis for a new trial. ("But then I want you to consider this, as soon as she retired—and she retired on August 31st, by September 20th, which is less than a month later, the fire department was before the City asking the City for an inter-fund loan to build Station 35. Why couldn't they do it in 2005 and why couldn't they do it back in 2006?"). It goes without saying that Kline cannot complain about evidence that she not only

4. In actuality, the record reflects Kline only made *one* objection in this regard, and this was an objection to an exhibit that was not included in the appellate record by Kline. "It is the appellant's responsibility to include trial exhibits that are necessary to our disposition of the appeal, Rule 81.12(e), and his failure to do so results in an assumption that the [exhibit is] immaterial to the appeal." *Howard v. Turnbull,* 316 S.W.3d 431, 434 n. 3 (Mo.App. W.D.2010). Finally, it is also worth noting that while Kline argues on appeal that admission of this evidence "was further compounded when the court submitted jury instruction Nos. 8 and 13," Kline did not make a specific

objection to these instructions in this context. "In order to preserve a claim of instructional error for review, a party must make specific objections to the instruction at trial, and renew it in the motion for a new trial." *Goralnik v. United Fire & Cas. Co.,* 240 S.W.3d 203, 210 (Mo.App. E.D.2007) (citing Rule 70.03). "The trial court cannot avoid error or make an intelligent ruling on the issue unless specific objections are made at trial, and we will not convict a trial court of error on an issue that it had no chance to decide." *Id.* Further analysis regarding the trial court's submission of these instructions to the jury can be found below in Point Five.

failed to object to, but *highlighted in closing argument* to further her client's case.

Even when assuming *arguendo* that Kline had lodged a proper objection to this evidence, we would be hard pressed to reach a conclusion that the trial court somehow erred in admitting this information into evidence. We outlined the following applicable standards in *Ziolkowski v. Heartland Regional Medical Center*, 317 S.W.3d 212, 216 (Mo.App. W.D.2010):

> The trial court is accorded considerable discretion in ruling on the admissibility of evidence, particularly where a subjective determination of relevancy must be made. Unless that discretion is abused, the exclusion of evidence on relevancy grounds is not a basis for reversal. On appellate review, the issue is not whether the evidence was admissible, it is whether the trial court abused its discretion in excluding the evidence.

> When reviewing for an abuse of discretion we presume the trial court's finding is correct, and reverse only when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. Upon finding an abuse of discretion, this court will reverse only if the prejudice resulting

from the improper admission of evidence is outcome-determinative.

*Id.* (citations and quotation marks omitted).

Here, one of the City's arguments at trial in defense to Kline's lawsuit was "that it had been working to provide gender-plus facilities since 2001" and to "see the City's progress the jury had to understand the process" where the City had a fifteen year plan. Specifically, the City presented "evidence of fire station completion dates showed that despite Appellant's complaint, the City's program was achieving results regarding gender-plus facilities" and "most of these fire stations that were completed after Appellant's retirement had been approved by Council for construction *prior* to her retirement." (Emphasis added.) As such, Kline has failed to demonstrate that the trial court abused its discretion, under the facts of this case, in allowing the City to present evidence that the City's behavior was in fact non-discriminatory.

For all of these reasons, we deny Kline's second Point.[5]

 In Point Three, Kline argues that the trial court erred in denying her motion for new trial "because the trial court's decision to exclude Appellant's evidence of three incidents of retaliation by [the City] against [Kline] was an abuse of discretion in that the evidence was relevant, material and probative" to prove that the City had "retaliatory animus towards" Kline. As previously outlined in detail in Point Two, "[a] trial court has considerable discretion

---

5. In her Reply Brief, Kline argues, for the first time on appeal, that the admission of this evidence was prejudicial because the City did not raise it as a defense in its Answer nor in its answers to interrogatories. "We do not review an assignment of error made for the first time in the reply brief." *Arch Ins. Co. v. Progressive Cas. Ins. Co.*, 294 S.W.3d 520, 524 n. 5 (Mo.App. W.D.2009) (internal quotation marks omitted). While it is true that Kline

mentioned in passing in her initial brief that that the trial court erred in admitting this evidence also because the "evidence had not been fully disclosed," we do not believe this cursory mention of this issue properly briefed this issue for appellate review and certainly did not appraise the City to the extent that they would later argue this issue in her reply brief.

in deciding whether to admit or exclude evidence at trial." *Birkenmeier v. Keller Biomedical, LLC,* 312 S.W.3d 380, 386 (Mo.App. E.D.2010).

At trial, Kline sought to prove that the City's challenged conduct (refusing Kline's trade request and the City's failure to update female facilities in the stations) was based on discrimination. Kline made three offers of proof of the evidence that the trial court refused to admit into evidence in order to prove her claims. Kline does not dispute that this evidence was not direct evidence of the City's intent to discriminate against Kline but, instead, was circumstantial evidence that "prove[d] a pattern of retaliatory conduct taken against Appellant initiated by [the City] and Dyer all with the intent of attempting to remove her from the fire department." Thus, Kline contends, the trial court abused its discretion in refusing to allow this evidence before the jury.

"In order to be admissible, evidence must be both logically and legally relevant." *Rader Family Ltd. P'ship, L.L.L.P. v. City of Columbia,* 307 S.W.3d 243, 250 (Mo.App. W.D.2010). "Logically relevant evidence establishes or negates a fact in issue or corroborates other relevant evidence." *Id.* "To be legally relevant, the probative value of the evidence must outweigh the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence." *Id.* (internal quotation marks omitted).

"Direct evidence is that which shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the employment decision." *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 n. 4 (Mo. banc 2007). "Direct evidence includes evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude, if it sufficiently supports an inference that the discriminatory attitude was more likely than not a motivating factor." *Id.* "Statements by decision-makers, however, are not considered direct evidence if they are unrelated to the decisional process." *Id.* "Direct evidence is not common in discrimination cases because employers are shrewd enough to not leave a trail of direct evidence." *Id.*

However, "evidence of other acts of defendant are admissible *if those acts are sufficiently connected* with the wrongful acts that they may tend to show defendant's disposition, intention, or motive in the commission of the acts for which ... damages are claimed." *Brockman v. Regency Fin. Corp.,* 124 S.W.3d 43, 51 (Mo.App. W.D.2004) (emphasis added, internal quotation marks omitted). In determining whether evidence is admissible in a discrimination case, the trial court must ascertain whether the proffered evidence would allow "a rational finder of fact to infer a discriminatory motive or ... [to] conclude that the employer intended to discriminate in reaching the decision at issue." *West v. Conopco Corp.,* 974 S.W.2d 554, 556 (Mo.App. W.D.1998) (citations omitted) (internal quotation marks omitted).

Based on the above governing standards, we conclude that the trial court did not abuse its discretion in excluding the evidence in question. Kline argues that the trial court erred in refusing to admit evidence pertaining to two instances in 2001 wherein the City *considered* reprimanding Kline for work related conduct but, ultimately, did not sanction Kline. The first such instance took place in June 2001 after Kline allegedly authorized fire-

fighters to train on a fire damaged building without first getting permission from the owner of the building. The second such instance took place in August 2001 when the City allegedly requested that Kline reveal the name of a source who had told Kline about inappropriate sexual conduct by someone at the Fire Department, and Kline refused to reveal the name of this source. While Kline asserts that these incidents are demonstrative of an "atmosphere of discriminatory animus," it is not disputed that Kline was not disciplined for either of these incidents, and therefore we conclude that the trial court did not abuse its discretion in excluding evidence of both of these incidents. Simply put, these events were not probative that Kline received any retribution by the City of any kind whatsoever because Kline admittedly cannot demonstrate any negative consequences that flowed to her because of these events. Nor did Kline link these remote events that took place in 2001 to the events she complained of at trial (her request to trade in 2006 and the conditions of the stations for female firefighters).

Finally, Kline made an offer of proof as it pertained to an incident in 2002 where she was given a "written reprimand" for "refusing to attend mandatory training." We cannot conclude that this "ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Ziolkowski*, 317 S.W.3d at 216 (internal quotation marks omitted). Kline does not contend that in receiving a written reprimand for failing to attend mandatory training that she was treated any differently than any other member of the Fire Department and that, therefore, the City's conduct was probative of bias. Furthermore, we fail to understand how Kline's reprimand in this regard was even tangentially related to her discrimination claims asserted at trial that had to do not with her abilities to perform on the job but, rather, whether the City was providing her with adequate, gender-appropriate facilities.

While Kline contends that "there is no requirement that the evidence of other conduct be directly related to the claim for it to be admissible evidence," Kline fails to cite any applicable authority that the trial court is *required* to admit evidence unrelated to a matter in dispute at trial. Kline cites our prior holding in *Rinehart v. Shelter General Insurance Co.*, 261 S.W.3d 583, 591 (Mo.App. W.D.2008), for the proposition that "[w]hen such intent is a focus of the inquiry, evidence should be allowed to take a wide range, and a party's actions toward others which tend to demonstrate intent in the present case is relevant." *Id.* (internal quotation marks omitted). But *Rinehart* does not control the instant issue. That case dealt with whether an insurance company refused to settle in bad faith over a personal injury claim that stemmed from an automobile accident. *Id.* After losing this claim at trial, insurance company appealed, asserting that "the circuit court erred in admitting evidence regarding Anthony Fields, another Shelter insured who was involved in a car accident unrelated" to the car accident in question. *Id.* at 590. At trial, plaintiff used this evidence to demonstrate "that Shelter's handling of the Fields' file was similar to problems that arose in the management of his file." *Id.* at 590–91.

Here, the evidence in question did not relate to how the City had previously treated similarly situated firefighters as Kline, and thus we fail to comprehend how *Rinehart* governs the resolution of the instant issue. We cannot conclude that the trial court abused its considerable discretion in determining that the evidence in

question was not probative of any material issue to be determined by the jury. We find no error in the trial court's rulings on these issues.

Point Three is denied.

■ In Point Four, Kline argues that the trial court erred in denying Kline's motion for new trial "because the trial court's decision to exclude Appellant's evidence of Section 292.150 and Section 292.160 was an abuse of discretion in that the evidence was relevant, material and probative (1) to prove appellant's claim of sex discrimination and (2) to disprove appellee's witnesses' testimony that unisex facilities are in compliance with the law, when the law clearly prohibits unisex facilities."

Kline sought to present "the content of [two] statutes to the jury," Section 292.150 and Section 292.160, which Kline argues "requires employers in places of employment where persons of both sexes are employed, to provide separate water closets and washrooms for women to wash or dress." These statutes provide the following:

> 292.150 Washrooms for women
>
> In every factory, workshop or other establishment in this state where girls or women are employed, where unclean work of any kind has to be performed, suitable places shall be provided for such girls or women to wash and dress.
>
> 292.160 Separate water closets
>
> Separate water closets shall be provided for the use of employees of either sex in manufacturing, mechanical, mercantile and other establishments in this state where persons of both sexes are employed.

■ Specifically, during her cross-examination of Dyer, Kline's counsel desired to read the above statutes for impeachment purposes. Kline fails to cite any authority for the proposition that counsel had a right to read state statutes to the jury, and for good reason because such is not the law in Missouri. "The courts of this state have held reading a statute to the jury is improper, and if, in reading the statute, counsel misstates the law or misleads the jury, it is reversible error." *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 802 (Mo. banc 1997). "In Missouri, the jury is to obtain the law only from approved jury instructions." *Eckelkamp v. Burlington N. Santa Fe Ry. Co.*, 298 S.W.3d 546, 552 (Mo.App. E.D.2009). "The purpose of instructions is to guide the jury in reaching a just verdict by informing the jurors of the law as it is to be applied to the evidence they have heard." *Id.*

The trial court would have erred if it allowed Kline's counsel to read these statutes to the jury, especially because we fail to comprehend how these statutes were relevant to the instant proceedings. Specifically, it is not disputed that neither statute falls within MHRA under Section 213. Rather, both of these statutes were placed by the Missouri legislature under the "Health and Safety of Employees" chapter of the Missouri Labor and Industrial Relations statutes, and both statutes were last amended in 1939.

Kline insinuates that she has standing to sue the City for violating both Section 292.150 and Section 292.160 because the City failed to provide separate facilities for her in the workplace. But it is not disputed that Kline *did not allege such claims as a basis for recovery as part of her lawsuit against the City*, and therefore it goes without saying that whether the City violated these other statutes is not directly relevant to her MHRA lawsuit. Had she wanted to, Kline could have alleged such claims as a separate basis for recovery in her lawsuit and sought equitable or mone-

tary relief from the City's alleged violation of those statutes. But because she did not bring such claims in the instant lawsuit, we expressly refrain from ruling on whether such claims were viable or not because that issue in this lawsuit is moot.

Rather, the question is whether the City's alleged violation of these Health and Safety statutes is probative of whether the City had discriminatory intent under MHRA as alleged by Kline. "MHRA was enacted by the Missouri General Assembly, *inter alia*, '[t]o ... eliminate and prevent discrimination because of race, color, religion, national origin, ancestry, sex, age as it relates to employment, [or] disability.'" *Smith v. Aquila, Inc.*, 229 S.W.3d 106, 112 (Mo.App. W.D.2007) (quoting Section 213.030.1(1)).

Kline failed to demonstrate that these statutes constituted evidence that demonstrated "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the employment decision." *Daugherty*, 231 S.W.3d at 818 n. 4. Contrary to Kline's argument, the fact that the City may have been in violation of Section 292.150 or 292.160 is not probative to prove her claim of sex discrimination any more than had the City violated any other employee health and safety law, such as those regulating fire escapes (Section 292.060), scaffolding (Section 292.090), or ventilation (Section 292.110). The City's alleged violation of these statutes would have no bearing on whether the City discriminated against Kline as it pertained to her employment, thereby violating *MHRA*.

For all of these reasons, Point Four is denied.

■ In Point Five, Kline claims that the trial court erred in denying her motion for new trial "because the trial court's decision to submit jury instruction nos. 8 and 13 was erroneous in that these instructions were improper affirmative converse instructions." Specifically, Kline sets out six different grounds from which she asserts the trial court so erred in submitting these two instructions:

> These instructions (1) did not follow the substantive law; (2) were prohibited sole cause instructions; (3) required evidentiary support to justify its submission which had not been disclosed to appellant prior to trial; (4) included unnecessary evidentiary details; (5) the independent facts were insufficient in law to defeat appellant's claims; and (6) misdirected, misled or confused the jury.

■ "Whether a jury was properly instructed is a question of law that this Court reviews *de novo*." *Bach v. Winfield–Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). "Review is conducted in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper." *Id.* "Instructional errors are reversed only if the error resulted in prejudice that materially affects the merits of the action." *Id.*

At the outset, we must first determine whether Kline properly preserved these issues for appeal. Rule 70.03 [6] states, in relevant part, the following:

> Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating

6. Unless otherwise indicated, all rule references are to the Missouri Rules of Civil Procedure (2010).

distinctly the matter objected to and the grounds of the objection.

■ It is not disputed that the only objection made by Kline to both instructions was that they included "unnecessary evidentiary detail." After making this objection, the trial court expressly inquired to Kline's trial counsel as to whether she wanted "to say anything else" to which counsel replied, "Nope." A "point on appeal must be based upon the theory voiced in the objection at trial and an appellant cannot expand or change on appeal the objection as made." *Carroll v. Kelsey*, 234 S.W.3d 559, 563 (Mo.App. W.D.2007) (internal quotation marks omitted). "A point on appeal may not enlarge or change the objection made at trial." *Berra v. Danter*, 299 S.W.3d 690, 703 (Mo.App. E.D.2009) (internal quotation marks omitted). "When the point on appeal contends that an instruction is erroneous on a different ground than was asserted in the objection made at trial, we may not review that error on appeal." *Id.*

■ Rule 84.13(c) states that "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "However, while an unpreserved claim may be reviewed for plain error in this Court's discretion, plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Atkinson v. Corson*, 289 S.W.3d 269, 276 (Mo.App. W.D.2009) (internal quotation marks omitted).

Kline concedes that five of her six objections to the instructions were not raised before the trial court prior to the instructions being submitted to the jury. While she further concedes that "a majority of courts" hold that "specific objections must be made at trial," Kline contends that this Court's prior holding in *Porta–Fab Corp. v. Young Sales Corp.*, 943 S.W.2d 686 (Mo. App.W.D.1997), provides an exception to this rule in that a "general objection to an instruction made at trial may be later specified in a motion for new trial." But Kline's argument ignores the fact that our holding in *Porta–Fab Corp.* does not assist litigants that later raise different and distinct objections to a jury instruction:

> They properly cite *Porta–Fab Corp. v. Young Sales Corp.*, for the proposition that a general objection to an instruction at trial may be later specified in a motion for a new trial. However, in *Porta–Fab*, the theory of the objection at trial, that the verdict director was based upon the wrong MAI, was the same as the theory put forth in the motion for a new trial and later upon appeal. That is not the case here.

*Carroll v. Kelsey*, 234 S.W.3d 559, 563 (Mo.App. W.D.2007) (citations omitted).

In *Carroll*, this Court concluded that in objecting to an instruction, the plaintiffs "put forth a theory other than that raised at trial." *Id.* Because of this, we concluded that the plaintiffs raised an objection to the instructions on appeal that "was not raised at trial" and, therefore, was "not properly preserved for appellate review." *Id.* Accordingly, we ultimately found that the proper course of action was for this Court to "limit[ ] its review of the Carrolls' claim of instructional error to" only that specific claim raised in a timely fashion before the trial court. *Id.*

Accordingly, we too will review only the specific claim that was properly preserved for appeal—namely, whether these instructions included "unnecessary evidentiary detail." Instruction Number 8 stated the following:

Your verdict must be for Defendant City of Kansas City, Missouri, if you believe:

First,

a. Defendant denied Plaintiff's trade request because Defendant's practice was for battalion chiefs to stay in their assignments for three years prior to a trade unless there were extraordinary circumstances; and

b. Defendant failed to provide the use of comparable restroom or shower facilities as male employees in the fire department because Defendant was implementing its program for the remodel or replacement of fire stations that provided for comparable restroom or shower facilities for both genders

and, second in so doing, Plaintiff's sex was not a contributing factor.

Furthermore, Instruction Number 13 stated the following:

Your verdict must be for Defendant City of Kansas City, Missouri, if you believe:

First,

a. Defendant denied Plaintiff's trade request because Defendant's practice was for battalion chiefs to stay in their assignments for three years prior to a trade unless there were extraordinary circumstances; and

b. Defendant failed to provide the use of comparable restroom or shower facilities as male employees in the fire department because Defendant was implementing its program for the remodel or replacement of fire stations that provided for comparable restroom or shower facilities for both gender

and second, in so doing, Plaintiff's filing of lawsuit or charges with the Equal Employment Opportunity Commission was not a contributing factor.

Kline argues that "the instructions are erroneous because they included unnecessary evidentiary details instead of ultimate issues, which favored [the City]." "A proper instruction submits, not evidentiary details, but only the ultimate facts, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another." *Alhalabai v. Mo. Dep't of Natural Res.*, 300 S.W.3d 518, 527 (Mo.App. E.D.2009). "The test is whether the instruction follows the substantive law and can be readily understood by the jury." *Id.*

Kline's argument need not detain this Court. In arguing that the instructions contained "unnecessary evidentiary detail," Kline did not at trial, and has not before this Court, suggest any "facts" that should have been struck by the trial court prior to the instructions being submitted to the jury. Kline does not highlight any specific verbiage from either instruction that was somehow prejudicial because it was too detailed or misleading in this regard. Without further elaboration by counsel, we are at a total loss as to what Kline's argument is as it pertains to "unnecessary evidentiary detail" in these instructions. It goes without saying that this Court cannot develop arguments for a party that were not made before the trial court and that are still not developed after a full opportunity to brief them on appeal. "For us to hold otherwise would require this court to assume the role of advocate for a party by attempting to develop an appellate argument the party has failed to set forth itself, which, in turn, would run the risk of creating poor precedent and manipulating the adversarial process." *Rodieck v. Rodieck*, 265 S.W.3d 377, 385 (Mo.App. W.D. 2008) (citations and internal quotation marks omitted).

For all of these reasons, Point Five is denied.

■ In Point Six, Kline asserts that the trial court erred in denying her motion for new trial "because the cumulative effect of the evidentiary errors . . . resulted in substantial prejudice and manifest injustice to appellant in that appellant was deprived of a fair trial." "An appellate court may grant a new trial based on the cumulative effects of errors, even without a specific finding that any single error would constitute grounds for a new trial." *Koontz v. Ferber*, 870 S.W.2d 885, 894 (Mo.App. W.D.1993). "However, relief will not be granted for cumulative error when there is no showing that prejudice resulted from any rulings of the trial court." *Id.*

Because Kline "has failed to persuasively identify any error during the trial, the point must fail." *Giles v. Riverside Transp., Inc.*, 266 S.W.3d 290, 300 (Mo. App. W.D.2008).

Point Six is denied.

■ Kline's seventh and last Point alleges that the "trial court erred in denying appellant's motion for judgment notwithstanding the verdict because appellant presented substantial uncontroverted evidence to prove appellant's claims as to unequal facilities and denial of the appellant's trade request."

■ "The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict." *All Am. Painting, LLC v. Fin. Solutions & Assocs., Inc.*, 315 S.W.3d 719, 723 (Mo. banc 2010). "Parties bearing the burden of proof generally are not entitled to a directed verdict." *Id.* "However, the plaintiff is entitled to a

directed verdict in the unusual situation where the defendant has admitted in its pleadings, by counsel, or through the defendant's individual testimony the basic facts of the plaintiff's case." *Id.* "In such instances, the plaintiff is entitled to a directed verdict because there is no question of fact remaining for the jury to decide." *Id.*

■ "[A] directed verdict is not given in favor of the party having the burden of proof no matter how overwhelming that party's evidence may be or how minuscule the other party's evidence may be; a directed verdict in favor of the party having the burden of proof (usually the plaintiff) is never based upon the plaintiff's evidence." *Brandt v. Pelican*, 856 S.W.2d 658, 664 (Mo. banc 1993). "This is in recognition of the fact that the defendant, who has the benefit of the burden of proof, is entitled to try the case with no evidence at all and to rely solely upon the jury disbelieving the plaintiff's evidence." *Id.* at 664–65. "This strategy may result in a loss for the defendant, but it will not be on a directed verdict; the defendant is entitled to have the case go to the jury." *Id.* at 665.

Kline argues that the "jury disregarded Appellant's uncontroverted evidence" and that therefore it "is clear there was no careful deliberation by the jury."[7] Because she bore the burden of proof, Kline's evidence alone was not a basis for a directed verdict, yet this is all she focuses on in arguing that the trial court erred in denying her motion for judgment notwithstanding the verdict. We must reject this Point because Kline has failed to even attempt to demonstrate how the City "has admitted in its pleadings, by counsel, or through the

---

7. We take issue with the bald assertion by Kline that the jury was "impatient for the trial to end" because "[t]hey wanted to get out because the trial was occurring so close to Christmas." It goes without saying that trial

by jury is the bedrock of our judicial system, and therefore Kline ought not be so cavalier in assailing the committed service of a jury panel merely because she is unhappy with the jury's verdict.

defendant's individual testimony the basic facts of the plaintiff's case." *All Am. Painting, LLC*, 315 S.W.3d at 723.

For these reasons we cannot conclude that the trial court somehow erred in denying her motion for judgment notwithstanding the verdict. Point seven is denied.

### Conclusion

The judgment of the trial court is hereby affirmed.

All concur.