

# In the
# Missouri Court of Appeals
## Western District

TRACY L. REED,

               **Appellant,**

v.

THE KANSAS CITY MISSOURI
SCHOOL DISTRICT,

               **Respondent.**

**WD78813**

**OPINION FILED:**

**December 6, 2016**

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Sandra Midkiff, Judge**

**Before Division Three:
Alok Ahuja, P.J., Victor C. Howard, and James Edward Welsh, JJ.**

Tracy L. Reed appeals the circuit court's judgment based on a jury's verdict rejecting her claims of discrimination and retaliation against her former employer, the Kansas City Missouri School District ("District"), which she brought pursuant to the Missouri Human Rights Act ("MHRA"), sections 213.010, *et seq.*, RSMo.[1]  We affirm.

---

[1]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement.

## Background

Viewed in the light most favorable to the jury's verdict,[2] the evidence at trial showed that Reed began working for the District as a substitute secretary in 1990. She was hired as a full-time secretary in June 1992 and worked at Westport High School for several years. In July 2010, Reed began working at Satchel Paige Elementary as one of two secretaries. For the 2011-12 school year, however, the District reduced the number of secretaries to one at each elementary school. Reed was assigned to stay at Satchel Paige, and, in July 2011, she assumed all of the secretarial duties except budgetary issues.

As a school secretary, Reed was required to perform customer-service oriented tasks in a "high-traffic" environment. In May 2011, Reed's direct supervisor at the time, Principal Chester Palmer, noted in a performance evaluation that Reed needed improvement in communication and customer service. In August 2011, following a complaint that Reed had spoken rudely to a person over the telephone, Palmer wrote a memorandum to Reed, reminding her that she was "expected to perform [her] duties as a professional" and not to "bicker with" or "confront" others.

In July 2012, April Flowers was hired to replace Palmer as school principal at Satchel Paige Elementary. Satchel Paige was a "focus school" that was at risk of becoming a low-performing school unless "sweeping changes" were made to help the school improve its performance. Flowers testified that "a great many changes" were required with "a quick plan to turn around" the school. When Flowers became principal, she had only one month to prepare for the upcoming school year that began in early August. As the sole secretary, Reed was expected to play a crucial role in helping her prepare.

---

[2]*Hayes v. Price,* 313 S.W.3d 645, 648 (Mo. banc 2010).

When Flowers came to Satchel Paige in July 2012, she gave Reed a list of forty-six tasks to be completed before school started. These were tasks that every District secretary would routinely perform. According to Flowers, Reed's attitude was "very disrespectful, rude and inappropriate." In addition, Flowers found that Reed had not properly maintained the filing system for student records during the 2011-12 school year (an essential part of her job), and the records were still disorganized and incomplete when Reed was terminated in August 2012. By the time Reed was terminated, she had finished only a few of her forty-six assigned tasks. As a result, Flowers hired Rachel Hayes (a former substitute secretary) to ensure that these tasks were completed on time.

Reed contends that, during the majority of her time with the District, she suffered from chronic mental and physical conditions, including severe depression (bi-polar disorder), paranoia, and other mental health issues, as well as degenerative disc disease and "a hip condition." Reed was diagnosed with a bi-polar disorder by Dr. James True at Swope Parkway Health Centers, who prescribed medication for her condition. Dr. True reported that Reed has trouble interacting with people, is "quite sensitive to excess stimulation," and "cannot work with distractions." Reed's bi-polar disorder and other psychological conditions cause her to have trouble concentrating, eating, sleeping, getting out of bed, and sometimes going to work. According to Reed, her condition was exacerbated by the stress from being the only secretary at Satchel Paige in 2011-12.

During Reed's employment, the District made reasonable efforts to accommodate her disabilities. Due to her physical disabilities, Reed requested that the filing cabinets be moved closer to her work area. That was done in January 2012. Reed also requested that the security monitor/buzzer used to admit visitors into the building be relocated to her desk in the corner of

3

the front office. When the District offered to move Reed to a workstation in the center of the office that would provide ready access to both the video monitor/buzzer and filing cabinets, Reed refused. She wrote in a July 2012 email: "[W]ith my condition I cannot have a buzzer intercom and telephone on a desk and perform my job with ease, with or without a job accommodation."

Reed ultimately asked the District to hire "additional staffing" to perform certain of her job duties. The District rejected this accommodation request, advising Reed that it was not reasonable "to expect [it] to hire someone to perform many of the essential functions of [her] job." As an alternative, Reed requested to be transferred to a high school where there were multiple secretaries in the office. The District rejected that request because Reed had previously been unsuccessful in a secondary school setting.[3]

The District terminated Reed's employment on August 3, 2012, after determining -- based on information from Reed and her physicians -- that Reed "simply [could not] perform the essential duties of [her] job with or without reasonable accommodations." This included Reed's admission that her "mental affliction" affected her "ability to concentrate" and her "ability to complete daily task[s] in a timely manner or if at all," as well as her physician's statement that she "cannot work with distractions." Reed applied for disability insurance benefits following her termination and included a statement from Dr. True stating that she was unable to work because she "cannot tolerate closeness to people or supervision." Dr. True confirmed at trial that Reed suffered from this same inability while employed by the District.

Following her termination, Reed filed a petition against the District in which she asserted employment discrimination and retaliation claims pursuant to the MHRA. Reed claimed in

---

[3]Reed agreed at trial that the high school environment had been "too much" for her when she had previously worked at Westport High School.

Count I that the District had discriminated against her based on her disability by failing to provide all the accommodations she requested. She claimed in Count III that she had been retaliated against for filing complaints and for requesting such accommodations. In Count II, she alleged that the District discriminated against her based on her age, which was fifty-three at the time of her termination.

Prior to trial, both parties sought the exclusion of certain evidence via motions *in limine*, which were addressed at pretrial hearings. The circuit court's decision to admit or exclude certain evidence that was the subject of those motions is the basis of this appeal.

At trial, Reed testified in her own behalf and presented the testimony of various witnesses, including Flowers. Both parties introduced numerous exhibits. The jury ultimately returned a verdict in favor of the District on all three counts. The circuit court entered judgment in accordance with the verdict and denied Reed's motion for new trial.

## Standard of Review

A trial court "enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal." *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015). We presume that the trial court's evidentiary rulings are correct. *Hurst v. Kansas City, Mo. Sch. Dist.*, 437 S.W.3d 327, 342 (Mo. App. 2014). The trial court's discretion is "particularly" considerable in ruling on the admissibility of evidence "where a subjective determination of relevancy must be made," such as in this case. *Frazier v. City of Kansas City*, 467 S.W.3d 327, 338 (Mo. App. 2015). An evidentiary ruling is an abuse of discretion only if it is "clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Cox*, 473 S.W.3d at 114. If

5

reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the court abused its discretion. *Kline v. City of Kansas City*, 334 S.W.3d 632, 642 (Mo. App. 2011).[4]  In addition, we will not reverse a judgment unless we find that an error "materially affected the merits of the action." *Cox*, 473 S.W.3d at 114.  We "will reverse only if the prejudice resulting from the improper admission [or exclusion] of evidence is outcome-determinative." *Hurst*, 437 S.W.3d at 342.

### Statutory Framework

The MHRA was enacted, *inter alia*, "[t]o . . . eliminate and prevent discrimination because of race, color, religion, national origin, ancestry, sex, age as it relates to employment, [or] disability."  § 213.030.1(1).  Pursuant to section 213.055.1(1), it is unlawful for an employer to fail or refuse to hire, or to discharge, or to otherwise discriminate "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability."  Section 213.010(1) defines "age," in this context, as "forty or more years but less than seventy years."  A "plaintiff can prove discrimination by showing [that] age or any protected characteristic[] was a *contributing* factor for the employment action regardless if other factors also exist."[5]  *Hurst*, 437

---

[4]While we decline to address Reed's claims regarding the denial of her motion for a new trial (*see* fn. 9, *infra*), we note that the standard of review for such a ruling is the same as for the admission or exclusion of evidence:  an abuse of discretion.  *See St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 134 (Mo. banc 2013).

[5]To establish disability discrimination, a plaintiff must establish that "(1) [she] is legally disabled; (2) [she] was discharged; and (3) the disability was a [contributing] factor in the . . . discharge." *See Hervey v. Mo. Dept. of Corr.*, 379 S.W.3d 156, 160 (Mo. banc 2012).  A claim of unlawful age discrimination based on discharge under the MHRA requires a plaintiff to show that:  "(1) the plaintiff is a member of a protected class; (2) the defendant discharged plaintiff; (3) plaintiff's age was a contributing factor in such discharge; and (4) plaintiff was damaged." *Thomas v. McKeever's Enter., Inc.*, 388 S.W.3d 206, 214 (Mo. App. 2012) (citing §§ 213.055 and 213.111).  To establish a claim of retaliation, a plaintiff must prove that "(1) [s]he complained of discrimination; (2) the employer took adverse action against [her]; and (3) a causal relationship existed between the complaint and the adverse action." *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 753 (Mo. App. 2011); *see* § 213.070(2).

S.W.3d at 339; *see* § 213.055.1. The MHRA also provides that it is an unlawful practice to "retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint . . . pursuant to this chapter." § 231.070(2). In reviewing a case under the MHRA, we look to Missouri law but also are guided by federal employment discrimination cases to the extent that they are consistent with Missouri law. *Cox*, 473 S.W.3d at 115.

## Point I: Exclusion of "Me-Too" Evidence

In Point I, Reed argues that the circuit court erred in ordering the "blanket exclusion" of "me too" circumstantial evidence of discrimination and retaliation, including the testimony of three former employees of the District. Reed contends that this evidence was both logically and legally relevant to prove her claims, in that it would have demonstrated the discriminatory motives and intent of the District and Flowers and corroborated Reed's claim of a "pattern and practice" of discriminating and retaliating against older or disabled employees.

Prior to trial, the District filed a motion *in limine* to prevent the inclusion of any testimony or evidence from any former employees (specifically mentioning the deposition testimony of Sheila Nichols-Nelson), who claimed that they were similarly discriminated or retaliated against on the basis of disability or age -- so-called "me too" evidence. Reed responded that granting the motion would prevent her from presenting evidence from which the jury could draw inferences of discriminatory intent against employees who were older or had disabilities and, thereby, prevent her from proving her case. Reed claimed that this circumstantial evidence was necessary to give context to her theory of the case and for the purpose of submitting her claim for punitive damages.

7

Like other forms of evidence, circumstantial evidence must be both logically and legally relevant to be admissible. *Cox*, 473 S.W.3d at 116. "Evidence is logically relevant if it make[s] the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Frazier*, 467 S.W.3d at 338. Legal relevance requires the trial court to weigh the probative value of the evidence against its costs, such as "unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence." *Id.* If the cost outweighs the usefulness of the evidence, it is not legally relevant and should be excluded. *Id.*

Reed relies heavily on *Cox*, where the Missouri Supreme Court reversed a judgment for the defendant in an employment discrimination suit because the trial court erroneously "issued a blanket ruling prior to trial excluding the 'me too' testimony of 17 potential witnesses," and refused to engage "in a witness-by-witness reexamination of its order when presented with . . . new facts in each offer of proof." *Cox*, 473 S.W.3d at 118-19. *Cox* applied the rule previously expressed by the United States Supreme Court that "*per se* exclusion of ['me too'] evidence would constitute an abuse of discretion" because admissibility of such evidence is "fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 118 (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387-88 (2008)).

Here, the record shows that the circuit court did not issue a "blanket ruling" but, instead, made a separate ruling for each individual witness after hearing evidence and argument for each proffered witness:

**Shelia Nichols-Nelson** was deposed in the case, and the District presented a substantial portion of her deposition testimony to the court at a pre-trial hearing in arguing that she should

8

not be allowed to testify at trial. Nichols-Nelson was a tenured teacher who voluntarily resigned from her employment with the District. She claimed that she felt forced to resign, but could not explain why she felt that way. She testified that, although Flowers helped get her the only accommodation that she remembered requesting, she believed that Flowers retaliated against her because Flowers was "no help" and "didn't give [her] a break."

The trial court excluded Nichols-Nelson's testimony after finding that her circumstances were not "similar enough [to Reed's] to get into devolving into her case." The court explained that Nichols-Nelson was a tenured teacher (not a secretary, like Reed) and that "the types of treatment here do not seem similar enough to make it relevant in this case." When the trial court announced its intention to exclude Nichols-Nelson from testifying, Reed's counsel requested an opportunity to make an offer of proof during trial, which the trial court granted. Reed never made an offer of proof at trial; she simply submitted a full copy of Nichols-Nelson's deposition transcript without reference to any portion that would warrant the admission of her testimony.

Here, the trial court considered the evidence submitted by the District as to Nichols-Nelson's expected testimony, made a ruling based on that evidence, offered Reed an opportunity to make a record at trial, and then maintained that ruling when Reed failed to make an offer of proof. Reed cannot now be heard to argue that the court erroneously excluded this evidence as part of a "blanket exclusion" when Reed failed to make a proper offer of proof.[6] "When a party fails to make an offer of proof, nothing is preserved for appeal." *Calzaretta v. Willard*, 391

---

[6]"An offer of proof must demonstrate the relevancy of the testimony offered, must be specific, and must be definite." *Karashin v. Haggard Hauling & Rigging, Inc.* 653 S.W.2d 203, 205 (Mo. banc 1983). "In order to present and preserve an offer of proof, the questions must be propounded to a witness who is present and has taken the stand. This enables the trial court to rule upon the propriety and admissibility of the evidence, and preserves a record for appellate review." *Id*.

9

S.W.3d 488, 493 (Mo. App. 2013). "Without an offer of proof, made on the record at trial, [this Court] cannot convict the trial court of error in failing to admit evidence[.]" *Id.*

**Hersticene Marshall** was also a subject of pre-trial discussions. Marshall had not been deposed, and so the trial court deferred ruling on the admissibility of her testimony. Reed's offer of proof at trial showed that Marshall was a tenured teacher who voluntarily resigned from her employment with the District. She claimed to have a physical disability caused by a bulging disc in her back. Marshall testified that she requested and eventually received the accommodation of transferring her classroom from the second floor to the first floor, but was uncertain about when that happened. She also testified that she did not know whether Flowers was the person in charge of granting or denying her request to move. The trial court excluded Marshall's testimony, holding as follows:

> I'm going to exclude the testimony of the witness for these reasons. First of all, she is in a completely different circumstance when she is a tenured teacher who admittedly . . . ended her employment voluntarily.
>
> She doesn't know who granted or who denied – there's a complete lack of clarity about how her request for accommodation was handled. She clearly said she doesn't know if April Flowers delayed it, granted it or denied the request to move to the first floor classroom.
>
> I don't think there's anything really that is enlightening here in the issues in this case given the lack of factual knowledge that the witness has. Clearly she has bad feelings about April Flowers, but I didn't hear anything that factually is related to what occurred in this case.

**Rosalind Smith** was first introduced at trial, and the trial court heard an offer of proof for her testimony. The court actively participated in the inquiry of Smith to determine whether her circumstances were similar to Reed's. Smith was also a tenured teacher who voluntarily resigned her employment with the District. Smith testified that she had heard Flowers state, in reference to another teacher, "if you can't do the job, you need to retire." Smith believed, based on this

10

statement, that Flowers treated her differently due to her age. Smith's complaint with Flowers was limited to age discrimination, not disability or retaliation.

The trial court allowed Smith to testify about Flowers' purported comment ("if you can't do the job, you need to retire") because it was a "direct comment of animus." The court held that Smith could testify about the circumstances surrounding that and any similar comments and about the circumstances of her own employment with the District. Otherwise, the trial court found that Smith's testimony was not relevant and was inadmissible because her circumstances were "apples and oranges" to Reed's.

Although the trial court here did not have the benefit of the *Cox* decision when it made its rulings, it was prescient in complying with that decision by fully considering the offers of proof for each witness and making evidentiary rulings consistent with the approach described in *Cox*. *Cox* holds that the factors to be considered by the trial court in assessing the logical evidence, or probative value, of "me too" evidence include "the nature of each employee's allegations," and whether a plaintiff and the "me too" witnesses were "similarly situated in relevant respects," "were treated in a similar manner," and "were otherwise similarly situated." *Id*. at 122-23.

Here, the trial court properly considered these factors and then excluded both Marshall's and portions of Smith's testimony on the basis of Reed's failure to demonstrate that their circumstances were sufficiently similar to hers, *i.e*., they were tenured teachers who retired, as opposed to being terminated, and their needs for accommodations or interactions with Flowers were not similar enough to be logically relevant.[7] Thus, the trial court did not apply a blanket

---

[7]Unlike Reed, none of the "me too" witnesses were terminated from their employment with the District. Marshall voluntarily resigned to move to Oklahoma; Smith resigned after being transferred to a different school under a supervisor other than Flowers; and Nichols-Nelson testified that she felt forced to resign, but could not say why she felt that way. In addition, all were tenured teachers and could not be "forced" to resign because, unlike Reed, they had "indefinite" contracts and enjoyed extensive protections under the Missouri Teacher Tenure Act (§§ 168.102, *et seq*.), which the circuit court noted.

11

rule for excluding "me too" evidence, as Reed suggests. Also, unlike in *Cox*, the court allowed Smith to testify about the circumstances of her departure from the District and her age at the time of the events in question. *Cf. id.* at 119 (finding improper blanket exclusion where trial court "specifically prohibited ['me too' witnesses] from even saying how old they were, much less testifying about their firings or resignations or any relevance of their ages to those events").

As noted, circumstantial evidence must be logically and legally relevant to be admissible. *Cox*, 473 S.W.3d at 116. "Determining whether proffered evidence is relevant is subjective, and trial courts are afforded considerable discretion in their admissibility rulings." *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 873 (Mo. App. 2009). We will not find an abuse of discretion in excluding evidence "unless the materiality and probative value of the evidence were sufficiently clear, and the risk of confusion and prejudice so minimal, that we could say that it was an abuse of discretion to exclude it." *Id*. at 872. Here, Reed does not establish that the court abused its discretion in finding that the testimony of these witnesses was not sufficiently relevant to be admissible.

In any event, in order to obtain a reversal based on the exclusion of evidence, Reed had the burden of demonstrating that the excluded evidence "would have materially affected the merits of the cause of action." *Id*. Reed did not include an allegation of prejudice in her Point Relied On and, thus, failed to preserve it. Under Rule 84.04(e), an appellant shall limit argument to those errors included in the points. "We do not consider an argument not preserved in the Point Relied On." *Frazier*, 467 S.W.3d at 340.[8]

---

[8]Reed also argues that the "me too" evidence was admissible on the issue of punitive damages, but rulings that affect damages issues "cannot be considered so prejudicial as to constitute reversible error" when a defendant prevails on liability. *See Frazier*, 467 S.W.3d at 342.

12

In sum, Reed fails to show that the trial court made a "blanket exclusion" of "me too" evidence or that it abused its considerable discretion in excluding the evidence in question. Unless the trial court has abused its discretion in excluding evidence on relevancy grounds, and unless the appellant properly raises and proves prejudice, there is no basis for reversal. *Kline*, 334 S.W.3d at 642. Point I is denied.

### Point II: Prior Complaints and Accommodation Requests

In Point II, Reed argues that the circuit court erred in admitting evidence related to her prior complaints of discrimination and requests for accommodation. She contends that the admission of such evidence was far more prejudicial than probative, was not relevant to the time period in question, contravened Missouri public policy and the intent of the MHRA, and materially affected the outcome of the case.[9]

In Reed's motion *in limine* #14, she sought to exclude the introduction of Exhibits 573, 548, 552, and 574, all of which were evidence either of Reed's prior disability discrimination complaints or requests for accommodations from the District. The trial court ruled at a pre-trial hearing that the District could discuss the accommodations Reed had requested and what she had been provided, but not that she had filed prior claims with the MHRA (other than the charge that was the subject of the lawsuit). Thus, while prior charges of discrimination would not be

---

[9]In Point II, Reed includes the additional claims that the circuit court erred in failing to grant her motion *in limine* and in failing to grant a new trial. First, a trial court's ruling on a motion *in limine* is interlocutory only and, thus, preserves nothing for appeal. *Day Advertising, Inc. v. DeVries and Assoc., P.C.*, 217 S.W.3d 362, 365 (Mo. App. 2007). Furthermore, including these multiple claims of error renders the point "multifarious." *See Fastnacht v. Ge*, 488 S.W.3d 178, 184 (Mo. App. 2016) ("Multiple claims of error in one point relied on render the point 'multifarious' and violate Rule 84.04."). As a general rule, multifarious points preserve nothing for appellate review and, thus, are subject to dismissal. *Id.* While we have reviewed Reed's claim of error in admitting this evidence, *ex gratia*, we exercise our discretion to disregard the other two claims of error contained in Point II.

13

admitted and would not be characterized that way, any requests for accommodations included in those documents would be admitted.

As noted, as an alternative to "additional staffing," Reed requested a transfer to a high school where there were would be multiple secretaries. The District rejected that request because Reed had previously been "unsuccessful in a secondary school." During trial, Reed was cross-examined about Exhibits 573, 548, 552, and 574, all of which showed that she had been unable to cope in the high school environment.

*Exhibit 573* is a January 2006 accommodation request written by Reed when she was a secretary at Westport High School, in which she sought a transfer from the front office because she was "having difficulty concentrating" in the "noisy, high traffic area." *Exhibit 548* is Reed's October 2007 letter to the MCHR (about a year and a half after her request in Exhibit 573 was granted), in which Reed claimed that the change in her environment from the main office to an unused counseling office did not constitute a job accommodation and was discriminatory. *Exhibit 552* is Reed's November 2008 claim of discrimination and retaliation stating that the District inappropriately moved her from the back room to the front office "where [her] disabilities had been affected." *Exhibit 574* is a February 2009 letter written by Reed stating that she was "suffering from both mental and physical pain" since being returned to the high school front office because it "is 'too excessive' for both of my disabilities" and asking to be removed from the main office "during regular working hours."

At trial, when Exhibits 573, 548, 552, and 574 were introduced, Reed failed to re-assert the objections from her motion *in limine*, and all were admitted without objection as to their

14

admissibility.[10]  "To properly preserve a challenge to the admission of evidence, [a] party must make a specific objection to the evidence at the time of its attempted admission."  *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 125 (Mo. banc 2013); *see also Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 133 (Mo. banc 2007) ("[t]o preserve an alleged error in admitting evidence for appellate review, a party must make a timely and valid objection and receive an adverse ruling").  By failing to raise any objections to the introduction of these exhibits at trial, Reed failed to preserve this claim for appeal, and we will not consider it. "[W]e will not convict a trial court of error on an issue that it had no chance to decide."  *Kline*, 334 S.W.3d at 641 n.4.

Reed's failure to object to the admission of the four exhibits at trial is fatal to her Point II, absent "plain error" review.  Under Rule 84.13(c), "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."  However, "plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections."  *Kline*, 334 S.W.3d at 647.  We decline to exercise our discretion to review this claim for plain error.  Consequently, Point II is denied.

**Point III:  Evidence of Prior Alcohol Abuse**

In Point III, Reed argues that the circuit court erred in admitting evidence related to her past alcohol abuse (including medical records and the testimony of Dr. True), because the evidence was not logically relevant to the issues of the lawsuit, was far more prejudicial than

---

[10]Prior to the offering of Exhibit 552 (and outside the presence of the jury), Reed's counsel objected to it being referred to as a "charge of discrimination" and asked for redaction from the exhibit of any reference to "charge of discrimination," the EEOC, the MCHR, or filing the charge of discrimination with state or local agencies, all of which the circuit court granted.  Reed's counsel did not object to the actual introduction of Exhibit 552.

probative (in that it confused, misled, and poisoned the jury against Reed), and materially affected the outcome of the case.[11]

In a motion *in limine*, Reed sought to exclude any evidence of her history of alcohol abuse. At the pre-trial hearing, the court deferred its ruling on that motion. When Reed's counsel objected to introduction of this evidence at trial, the District argued that Reed's doctor testified in his deposition that her alcohol abuse "can trigger her mental conditions that are at issue in this case independent of her work environment. And so it's highly relevant and probative." Noting that the information was used by Dr. True in forming his opinions about Reed's disabilities and required accommodations, the trial court overruled the objection.

The jury was presented with the deposition testimony of Dr. True, Reed's treating psychiatrist, regarding Reed's alcohol use. Dr. True testified that he treated Reed for "substance abuse" and that Reed "drank" but that he did not request any accommodations for Reed based on that, and he did not recall whether Reed had substance abuse issues during the time period of 2011-12. When presented with Exhibit 704 (an intake form filled out by Reed and her therapist on July 22, 2011), Dr. True acknowledged that Reed had self-reported using alcohol during that time. Exhibit 704 (to which Reed also objected) stated the "date of last use" for alcohol as "3 weeks," or about July 1, 2011, when Reed became the sole secretary at Satchel Paige. Dr. True confirmed that Reed's admitted consumption of "a lot" of alcohol on a "daily" basis for "symptom relief" and "relaxation" on the intake form would constitute a substance abuse problem, and concluded that her alcohol use could potentially "be a trigger for [her] mental disabilities" independent of anything going on at work.

---

[11]Again, in this Point Relied On, Reed includes the additional claim that the trial court erred "in failing to grant a new trial"; we refer the reader to our discussion of multifarious points in fn. 9, *supra*.

The District was also allowed to question Reed about Exhibit 704 and her alleged past alcohol abuse. When asked if alcohol "played a part" in her problems in July 2011, Reed stated that "[a]t times I would drink a little bit more than I wanted to, to sleep[,]" "when I became depressed or couldn't sleep." When asked, "Well, [on the intake form] you provided daily; didn't you?" Reed reiterated, "[a]fter work hours to go to sleep." The District also raised Reed's alleged alcohol abuse in closing argument.

The court did not abuse its discretion in finding that evidence of Reed's past alcohol abuse was relevant to assessing the causes of symptoms associated with her disabilities and the effectiveness of accommodations requested by her and her physicians. The evidence was highly relevant to the decisive issue of whether Reed could perform the essential functions of her job even with reasonable accommodations. *See Brown v. Hamid*, 856 S.W.2d 51, 56 (Mo. banc 1993) (evidence is relevant if "an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence"). In other words, if it is not just the stressful work conditions but alcohol abuse affecting her mental condition, then modifying her work conditions may be futile.

Even if we were to find that the circuit court abused its discretion in admitting this evidence, Reed fails to establish that a different evidentiary ruling would have changed the outcome of the trial. Here, the record fully substantiates Reed's significant and ongoing performance issues and contains overwhelming evidence that Reed could not perform the essential functions of her job regardless of what accommodations were provided. "[T]o be disabled under the MHRA, [the plaintiff] must be able to show that she has an impairment but can work *with* or without *reasonable accommodation*." *Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 321 (Mo. App. 2005) (emphasis added); *see also* § 213.010(4). Here, the

17

record included Reed's admission that "with my condition I cannot have buzzer, intercom and telephone on a desk and perform my job with ease, with or without a job accommodation," and Dr. True's opinion that Reed "cannot tolerate closeness to people or supervision," as well as his testimony that he knew of no secretarial position at the District where those circumstances were not present. In addition, Reed's claim that the District discriminated and retaliated by failing to transfer her to a high school or hire additional staff could certainly be perceived as unreasonable. *See, e.g., Umphries v. Jones*, 804 S.W.2d 38, 41 ( Mo. App. 1991) ("Reasonable accommodation does not require the employer to reassign an employee or to restructure a job in a way that would usurp the legitimate rights of other employees."); *Jewell v. Blue Valley Unified Sch. Dist.*, 210 F.Supp.2d 1241, 1251 (D. Kan. 2002) ("employers are not required to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his or her disability").

In sum, the trial court did not abuse its discretion in admitting this evidence, and Reed fails to establish that a different evidentiary ruling would have changed the jury's verdict. Thus, Point III is denied.

### Point IV: Cumulative and Prejudicial Effect of Errors

Reed contends in Point IV that the circuit court erred in failing to grant her a new trial because the cumulative effect of the foregoing errors materially affected the jury's ability to consider the evidence in its entirety, which, in turn, directly affected the outcome of this case.

We disagree. There was no cumulative prejudicial error. Rulings I through III were all individually correct, and Reed cannot establish that different rulings would have resulted in a different outcome in light of the overwhelming evidence that she could not perform her job with or without accommodations. As we did not find an abuse of discretion in Reed's first three

18

points, and because she failed to show that any prejudice resulted from any of the trial court's rulings, we refuse to grant relief for cumulative error. *Frazier*, 467 S.W.3d at 347. Point denied.

## Conclusion

Reed fails to identify any reversible errors made by the trial court; thus, we affirm the judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.