

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| LINDA RINEHART, | ) |
| | ) |
| Appellant, | ) |
| | ) WD85112 |
| v. | ) |
| | ) OPINION FILED: |
| | ) May 30, 2023 |
| MISSOURI DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Adam L. Caine, Judge**

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Karen King Mitchell and W. Douglas Thomson, Judges

Ms. Linda Rinehart ("Rinehart") appeals from the judgment entered by the Circuit Court of Jackson County, Missouri ("trial court"), after a jury verdict in favor of the Missouri Department of Corrections ("DOC") on Rinehart's petition for sex discrimination and retaliation under the Missouri Human Rights Act ("MHRA"). On appeal, Rinehart asserts evidentiary errors by the trial court warranting a new trial. We affirm.

## Factual and Procedural Background[1]

Rinehart filed suit against the DOC pursuant to the MHRA, alleging that while she was employed by the DOC at the Kansas City Community Release Center, she was subjected to gender discrimination/sexual harassment (Count I), age discrimination (Count II), hostile work environment (Count III), and retaliation (Count IV). Rinehart's claims focused on her relationship with her immediate supervisor, Mr. Spencer Colliatie.

Prior to trial, Rinehart notified the DOC that she was planning to call three "me-too" witnesses. The DOC filed a motion in limine as to each of the three witnesses. During argument on the motion in limine, Rinehart's counsel informed the trial court why Bryant Holmes qualified as a legally relevant "me-too" witness:

> Bryant Holmes was assistant warden. He's in the chain of command off and on during the time frame that Ms. Rinehart is making her complaints. . . .
>
> He, specifically, to his upper chain of command . . . made complaints that Lilly Angelo, the warden, was discriminating against various people inside the facility about various aspects of discrimination and retaliation. He specifically in a memo actually names Ms. Rinehart by name.
>
> And so then immediately after he makes these complaints on behalf of himself—because he includes himself and others being discriminated against—he then is retaliated, he's put on a Performance Improvement Plan, which is very similar to what our client—our client complained and then was put on a Performance Improvement Plan. And then after he was taken off the plan, like within a week, while they still had not investigated his complaints, then they transferred him involuntarily up to St. Joe. Which he claims is retaliation. . . .

---

[1] "We view the evidence in the light most favorable to the jury's verdicts, disregarding all contrary evidence and inferences." *Miller-Weaver v. Dieomatic Inc.*, 657 S.W.3d 245, 250 n.4 (Mo. App. W.D. 2022) (internal quotation marks omitted).

[H]e made a complaint, was retaliated against, his complaint fell on deaf ears. To this day, HR has never investigated his complaints. They never took any prompt remedial action against Lilly Angelo or any of the rest of the people. They never came in and investigated or asked anybody any questions about it.

So that's how Bryant Holmes fits in as a "me-too" and that's why he's relevant in this case, is because he complained to the same people my client complained to, complained about some of the same people that my client complained to, and then they took action against him.

Later in the trial, during a discussion regarding exhibits, Rinehart's counsel announced, "When Bryant Holmes testifies, I would like to offer Exhibit 85, but I would like to either find out if we can do that now or not." When the trial court reconvened after a recess, without the jury present in the courtroom, the admission of Exhibit 85 was discussed:

THE COURT: And then, just as a heads-up, [Rinehart's counsel] had said that their next witness, Mr. Holmes, he intends to attempt to admit Exhibit 85, and the defense has had a chance to review that. And it's my understanding the defense intends to object to that?

[COUNSEL
FOR THE DOC]: That's correct, Your Honor. Exhibit 5 (sic) is a memo from Bryant Holmes, and it contains hearsay and it contains evidence of—"me-too" evidence. Exhibit 85.

[COUNSEL
FOR RINEHART]: And our response to that would be, Judge, there is hearsay in here. Exhibit 85 is a complaint that was made by Bryant Holmes directly to the administration and to HR. **And this goes to *notice***, and it also goes to demonstrate, and will demonstrate with this witness, that there is a pattern of MDOC failing to take action and failing to investigate.

**But this goes to put them on *notice* of the problem in this facility at the time our client was**

3

**there**.  And he was the deputy warden at that time.  **So it's *notice*, Judge**.

THE COURT:    And this would be Mr.—the witness you referred to is Mr. Holmes?

[COUNSEL
FOR RINEHART]:  Yes.  He's coming in with the author of this document.

THE COURT:    Okay.  All right.  I haven't had a chance to review it yet.  I'll review it, and then obviously I'll study up and have some thoughts for you when you move to admit it.  Just if you can approach when you move to admit it and I'll think through my options and review it before then.

(Emphasis added.)

Before Mr. Holmes testified, when the jury was out of the courtroom, the trial court informed the parties:

I've had a chance to look over Exhibit 85, and my proposed suggestion will probably make nobody happy, but here's where I'm at.

I've made some redactions to that that you can review, and then I have a proposed limiting instruction for 85.

And 85, just to refresh the record here, is a memo from Bryant Holmes, who's going to be our next witness.  It contains a lot of information, some of which I think I've ruled is admissible based on our "me-too" record, some of which I think I said I was not going to admit as part of the "me-too" record.  And so there's some narrative sections about other individuals in there that I've redacted out.

I've also redacted out Mr. Holmes' kind of description of his allegations about sexual advances.  And then he had an allegation about a prior discriminatory—I can't remember if it was a suit, but some sort of of discriminatory action with the Department of Corrections back in 2015.

Look at this during the break.  You don't need to react now.  And you can kind of give me your thoughts on it after the break.

4

After the break, the trial court went back on the record, when the jury was out of the courtroom, in order to discuss Exhibit 85 again, with the trial court explaining its response to the DOC's objections to the admission of Rinehart's Exhibit 85:

> The plaintiff had raised an issue that they intend to admit, or try to admit, Exhibit 85. And we heard the defense's kind of summary objections to that. I took some time to read through the exhibits. Based on my review of the exhibit, the Court made some proposed redactions that we've provided to the parties.
>
> Additionally, I've proposed a limiting instruction to go with the redacted exhibit. The limiting instruction says: The statements contained in Exhibit 85 are not to be considered for their truth but for you to consider the alleged ***notice* provided to the Department of Corrections** of the allegations of discriminatory or retaliatory conduct.
>
> . . . .
>
> I've left in comments that I thought were just general allegations to the Department about how they handle discriminatory complaints and some of the process-related complaints that Mr. Holmes is making.
>
> And then there's a paragraph that directly details some information about Ms. Rinehart that I've also left in. And then the things that are redacted where there are some narrative sections about other individuals and alleged discriminatory practices, I redacted those. Also the specifics of some sexual advances and some sexual harassment-type allegations against by Mr. Holmes against Ms. Angelo.
>
> And then, as I mentioned, there was a reference at the end towards Mr. Holmes had a previous—it was either a suit or a claim against the Department, I think that was back in 2005, that I also redacted out.
>
> So that's just a summary of what I've done and kind of proposed to the parties in terms of what I would be considering. And I'll just turn it over to you for any record you'd like to make.

(Emphasis added.)

Rinehart's counsel, instead of lodging any complaint or objection to the proposed redactions to Exhibit 85 and the corresponding limiting instruction to the jury, responded:

5

"We understand what the Court said.  I don't think we have anything further to say.  And I understand the Court's reasoning on the limiting instruction."  DOC's counsel made a further objection requesting additional redactions related to Rinehart's disability discrimination claim.  Rinehart's counsel argued that the objection was irrelevant because the trial court was proposing to give a limiting instruction.  Upon further argument by DOC's counsel regarding additional redactions to Exhibit 85, the trial court clarified that DOC's objections related to "the notice issue" and "to allegations how Ms. Angelo treated people and directed people to be treated.  And so that's why I think the limiting instruction is appropriate."

During Mr. Holmes's testimony, he was questioned about why he was involuntarily transferred from the Release Center in Kansas City where he was deputy warden to the Western Reception Diagnostic Correctional Center in St. Joseph where he was assistant warden.  He responded:  "Because I actually—I reported a lot of misconduct.  A lot of violations of ADA, FMLA, and also how I was being treated as well up the chain of command.  And I feel that I was retaliated against for reporting that information up the chain of command."  DOC's counsel objected on the grounds of relevance and that the testimony served to confuse the jury and asked the court "to make that running objection."  The trial court allowed the "running objection" and overruled it. Rinehart's counsel continued:

Q.  I'm going to show you what's been marked as Plaintiff's Exhibit 85.

[COUNSEL
FOR RINEHART]:  At this time I move for the admission of Plaintiff's
            Exhibit 85.

6

| [COUNSEL FOR THE DOC]: | Your Honor, I would just like to impose the objection as we discussed off the record. |
|---|---|
| THE COURT: | All right, thank you. That objection is overruled. Exhibit 85 is admitted. I have a short instruction that's going to be prepared with Exhibit 85. |
| | The statements contained in Exhibit 85 are not to be considered for their truth but for you to consider the alleged *notice* provided to the Missouri Department of Corrections of the allegations of discriminatory or retaliatory conduct. |
| | And so with that instruction, Exhibit 85 is admitted.[2] |

(Emphasis added.)

The jury returned a verdict in favor of the DOC on Rinehart's claims of sex discrimination and retaliation.[3] On November 1, 2021, the trial court entered its Judgment in accordance with the jury's verdict.

---

[2] Before Mr. Holmes testified, the trial court asked the parties to "make sure you retain the original so it's clear what I redacted here." Rinehart submits on appeal that the trial court admitted *unredacted* Exhibit 85 into evidence, and then *sua sponte* redacted a significant portion of Exhibit 85 and issued a limiting instruction to the jury. We reject this characterization, as the record reflects that the trial court explained its redactions and the limiting instruction to the parties *before* Mr. Holmes was examined about Exhibit 85's content. Furthermore, during Mr. Holmes's direct examination, none of the paragraphs read from Exhibit 85 were redacted paragraphs. During Rinehart's closing argument, counsel referred to Mr. Holmes's memo, "and some of it's blacked out but that's Exhibit Number 85." Also, during rebuttal argument, Rinehart's counsel asked that Exhibit 85, "[t]he redacted one," be shown to the jury, and asked the jury to read it during their deliberations.

[3] Appellant's Second Amended Petition set forth four causes of action pursuant to the Missouri Human Rights Act: Count I (gender discrimination/sexual harassment), Count II (age discrimination), Count III (hostile work environment), and Count IV

Rinehart timely appealed.

## Standard of Review

"A trial court has considerable discretion in the admission of evidence at trial, and an appellate court will reverse only for an abuse of that discretion." *Sherry v. City of Lee's Summit*, 623 S.W.3d 647, 657 (Mo. App. W.D. 2021). "A ruling constitutes an abuse of discretion when it is 'clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id.* at 658 (quoting *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015)). "'If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion.'" *Id.* (quoting *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014)). "Furthermore, to warrant reversal, the admission of any evidence, even if admitted in an abuse of the trial court's discretion, must have prejudiced the objecting party by materially affecting the merits of the action." *Id.* (citing *Cox*, 473 S.W.3d at 114).

## Analysis

Rinehart's two points on appeal assert that the trial court erred in redacting portions of her Exhibit 85 and in giving the jury a limiting instruction regarding the exhibit.

_____

(retaliation). During the trial of this matter and prior to the case being submitted to the jury, Rinehart dismissed Counts II and III from Plaintiff's Second Amended Petition, which dismissal the trial court accepted.

8

We first note that there is some question as to whether these issues have been preserved for appellate review.

"'To properly preserve a challenge to the admission of evidence, [a] party must make a specific objection to the evidence at the time of its attempted admission.'" *Reed v. Kansas City Mo. Sch. Dist.*, 504 S.W.3d 235, 246 (Mo. App. W.D. 2016) (quoting *St. Louis Cnty. v. River Bend Ests. Homeowners' Ass'n*, 408 S.W.3d 116, 125 (Mo. banc 2013)). Rinehart did not object when the trial court presented the proposed redactions and the proposed limiting instruction to go with the redacted exhibit to the parties and invited the parties to make a record of their response. Instead, Rinehart's counsel acquiesced to the trial court's response to the DOC's challenge to the admission of Exhibit 85, stating: "We understand what the Court said. I don't think we have anything further to say. And I understand the Court's reasoning on the limiting instruction." "Where a party affirmatively indicates in the trial court that it has no objection to [a] trial court ruling, it may be found to have 'intentionally abandoned' the issue, waiving even plain-error review." *Gray v. Mo. Dep't of Corr.*, 635 S.W.3d 99, 103 (Mo. App. W.D. 2021). In fact, when DOC's counsel made a further objection requesting additional redactions related to Rinehart's retaliation claim, Rinehart's counsel affirmatively embraced the limiting instruction and argued that DOC's objection was irrelevant because of the trial court's limiting instruction.

The record reflects that Rinehart never objected to the trial court's manner of addressing DOC's objections to Exhibit 85 by redacting portions of the exhibit and by crafting a limiting instruction to accompany the exhibit and Rinehart affirmatively stated

9

that the limiting instruction was "understandably" given. "A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." *Davis v. Davis*, 582 S.W.3d 100, 106 (Mo. App. W.D. 2019) (internal quotation marks omitted). *See also Wilson v. P.B. Patel, M.D., P.C.*, 517 S.W.3d 520, 525 (Mo. banc 2017) ("It is axiomatic that a [plaintiff] may not take advantage of self-invited error or error of [her] own making."). The first time Rinehart raised her assertions of error relating to Exhibit 85 was in her motion for new trial. "To preserve an issue for appeal to this Court by raising it in her motion for new trial[,] [the appellant] was required to present the issue or objection to the trial court during the trial as opposed to raising it for the first time in the motion." *Davis*, 582 S.W.3d 106 n.2 (internal quotation marks omitted). In other words, when an objection could have been made during trial, raising the issue for the first time in a motion for new trial is insufficient to preserve the alleged error.

"Apart from questions of jurisdiction of the trial court over the subject matter, . . . allegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a). "Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court." *Weibrecht v. Treasurer of Mo.*, 659 S.W.3d 588, 592 n.4 (Mo. banc 2023) (internal quotation marks omitted). Because Rinehart did not object to the trial court's redaction of Exhibit 85 and the trial court's giving of the limiting instruction regarding Exhibit 85, her claims of error are arguably not preserved, and our only review is for plain error. Under Rule 84.13(c), "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion

10

of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "However, plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Reed*, 504 S.W.3d at 246 (internal quotation marks omitted). Accordingly, it is within our discretion to decline to exercise our discretion to review this claim for plain error.

Conversely, Rinehart argues that she never offered the redacted version of Exhibit 85 into evidence. Rinehart claims that she offered the *unredacted* Exhibit 85 into evidence and it was admitted. Hence, she claims that she had no obligation to object to her evidence without redaction; and her complaint is that the trial court, after admitting the *unredacted* Exhibit 85, then *sua sponte* redacted Exhibit 85 and *sua sponte* issued a corresponding limiting instruction.

This argument belies the colloquy between counsel and the trial court as itemized in detail earlier in today's ruling. *Before* witness Holmes testified, the trial court made clear its ruling to DOC's objection to Exhibit 85—including the redactions and limiting instruction. In fact, it was *Rinehart's counsel* that asked for the trial court's ruling on Exhibit 85's admissibility *before* attempting to offer Exhibit 85 with witness Holmes. We find it hard to believe that Rinehart's counsel took the time to clarify the trial court's ruling on Exhibit 85, only to ignore it when Rinehart offered Exhibit 85 into evidence.

That said, our record on appeal shows two "Exhibit 85's." One of the exhibits is unredacted and the other is redacted and attached to a limiting instruction identified as Exhibit 85A. Though the trial court urged counsel for the parties to keep the two

11

versions of Exhibit 85 separate for identification purposes on appeal, there is at least some arguable confusion on the topic. Irrespective, we need not decide whether the trial court's evidentiary rulings are preserved for review as, under any lens of review, there is no trial court error.

When Rinehart advised the trial court that she intended to introduce Exhibit 85, the DOC objected on the grounds of hearsay. Rinehart responded that the admission of the exhibit was justified on the grounds of notice:

> Exhibit 85 is a complaint that was made by Bryant Holmes directly to the administration and to HR. **And this goes to *notice***, and it also goes to demonstrate, and will demonstrate with this witness, that there is a pattern of MDOC failing to take action and failing to investigate.
>
> **But this goes to put them on *notice* of the problem in this facility at the time our client was there**. And he was the deputy warden at that time. **So it's *notice*, Judge**.

(Emphasis added.) The trial court explained on the record why it responded to the DOC's objections to the admission of Rinehart's Exhibit 85 by proposing redactions to the exhibit and a limiting instruction to go with the redacted exhibit. The limiting instruction instructed the jury to consider the statements in Exhibit 85 as ***notice* to the DOC of alleged discriminatory or retaliatory conduct, just as *Rinehart* argued**. The trial court only redacted: narrative sections about other individuals; information regarding a separate harassment allegation made by Mr. Holmes against Warden Angelo; and a reference to Mr. Holmes previously filing suit against the DOC in 2005. The trial court's ruling on DOC's objection to Exhibit 85 demonstrated a reasoned decision that was carefully and deliberately dispatched to permit Exhibit 85 to stand for the proposition

12

Rinehart demanded it stood for—notice—while also addressing hearsay matters unrelated to "notice" to be redacted.  The steps that the trial court took to manage the admissibility of Exhibit 85 do not demonstrate an abuse of the trial court's discretion.

Further, even though the trial court redacted portions of Exhibit 85, Rinehart introduced "me-too" evidence through three witnesses, all over the DOC's objections as to relevance.  Rinehart has not shown how she was prejudiced by the limiting instruction and the redactions to Exhibit 85 or how the merits of the action were materially affected by the trial court's limiting instruction and redactions.[4]

---

[4] Rinehart claims that the trial court became an advocate for the DOC by acting *sua sponte* to redact portions of Exhibit 85 and to issue a limiting instruction.  Rinehart's reliance on *Mahaney v. Kansas City, Clay County & St. Joseph Auto Transit Co.*, 46 S.W.2d 817 (Mo. 1932), and *State v. Finley*, 704 S.W.2d 681 (Mo. App. S.D. 1986), to support her contention regarding redaction is misplaced.  In *Mahaney*, the Missouri Supreme Court determined that it was improper for the trial court to interpose objections and comment on the evidence.  46 S.W.2d 819.  Here, the trial court neither made objections during witness testimony nor expressed an opinion about the evidence.  Rinehart's reliance on *Finley* is similarly misplaced.  In *Finley*, the court of appeals held that it was improper for the trial court to assume the prosecutor's role as an advocate for the State by suggesting that the prosecutor should reopen cross-examination of the defendant to impeach the defendant's testimony by proof of a prior conviction.  704 S.W.2d at 684.  Here, the trial court did not make any suggestions regarding the impeachment of witnesses.

Likewise, the cases on which Rinehart relies regarding the limiting instruction are inapposite in that they stand for the proposition that if evidence is admissible for one purpose but improper for other purposes, it should be received, subject to a limiting instruction, if the objector so requests.  If no request is made, the objector cannot complain that the trial court erred in not giving a limiting instruction.  Here, the trial court *gave* a limiting instruction, admitting the evidence for the purpose requested by Rinehart over the DOC's objection.  Furthermore, the trial court's oral statements on the record explaining its actions and rulings reflect that the trial court was crafting a compromise ruling with regard to the DOC's challenge to the admission of Exhibit 85 and was not acting *sua sponte*.

13

Points I and II are denied.

## Conclusion

The trial court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Presiding Judge

Karen King Mitchell and W. Douglas Thomson, Judges, concur.

---

We also note that the references to Exhibit 85 in the record are minimal, considering that fifteen witnesses testified during the six-day trial, and the trial transcript consists of 1,295 pages.